## Case No. 6,142.

### HARRISON v. ROWAN.

### [4 Wash. C. C. 32.] [1]

Circuit Court, D. New Jersey. April Term, 1820.

MISCONDUCT OF JURY—GROUNDS FOR NEW TRIAL.

1. If the jury, after they are sent out, and before their verdict is rendered, take refreshments without leave of the court, it is misbehaviour in them; but the verdict is not affected thereby, unless they are furnished by the party in whose favour they find.

2. It is no objection to a verdict that the juryman at one time dissented, while the jury were absent from the court, if he afterwards agreed to the verdict, although he preferred giving no verdict, and stipulated with his brethren that none should be rendered, unless the court should refuse to discharge them. Evidence of such facts coming from a juryman is entirely improper.

3. The rules which prevail in England relative to new trials of issues out of chancery, are not applicable to the circuit courts of the United States, where the same judges that direct, superintend the trial of such issues. Here the only question can be, are the judges satisfied with the verdict?

4. Washington, Circuit Justice. stated, that the verdict was supported by the evidence, and that he was satisfied with it. But this is not enough. The court should be satisfied; and the district judge not being satisfied, a new trial ought to be granted.

The jury having found in favour of the plaintiff [Case No. 6,141], the defendant now moved the court for a re-trial of the issue upon the following grounds: (1) That the jury, before they had agreed on a verdict, ate and drank at the expense of the plaintiff in whose favour they found, without the leave of the court. (2) That one of the jurymen did not, in reality, agree to the verdict, but assented in order to get discharged; and being told that the court would keep the jury together till they did agree. (To prove the facts upon which both these grounds were taken, the defendant offered the affidavits of some of the jurymen, which were objected to. The court directed them to be read, reserving the necessary observations on the competency of the evidence, till the opinion upon the whole case should be given.) (3) That the property being of great value, and the inheritance involved in, and bound by the verdict, a new trial ought upon general principles to be granted. (4) That the verdict was against the evidence. The evidence given in support of the two first grounds is stated in the opinion of the court; and to prove that such evidence is admissible, the following cases were relied upon: 2 Morg. Essays, 25, 26, 21; Vin. Abr. 452, tit. "Trial," pl. 22; 1 Mass. 530; Coxe [N. J. Law] 123, 166; 1 Wash. [Va.] 336, 337; 2 Morg. Essays, 46, 47; 2 Wash. [Va.] 80; 1 Wash. [Va.] 79. To prove that the objection to the verdict, if

---

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

made out in evidence, is fatal: Co. Litt. 227b; 1 Vent. 125; 12 Mod. 111; 3 Bl. Comm. 375, 376; Freem. 79. As to the manner in which the verdict was agreed to, it was insisted that it was, in principle, the same as throwing up which way it should be, because the dissenting juryman put his opinion to coincide with his associates, upon the uncertain decision of the court to discharge, or to keep the jury together. (3) In support of the third ground were cited: 2 Vern. 75, 37, 38, 419; 3 Taunt. 91; 2 Term R. 113; 1 Dick. 87; 2 Dick. 500, 683; 3 Atk. 542; 2 Ves. Sr. 553; 2 Ves. Jr. 287; 7 Brown, Parl. Cas. 1, 10, 11; 3 Brown, Parl. Cas. 218, 220; 6 Brown, Parl. Case. 440; 13 Ves. Jr. 290; 1 Vern. 293; 1 Ves. Jr. 133; 1 Hen. & M. 550. (4) On the last point were cited: Amb. 210; 9 Ves. 169; 2 Atk. 320. For the plaintiff, and in support of the verdict it was contended on the first point, that the affidavits of the jurymen are inadmissible. 2 Tyler, 11; 2 South. [5 N. J. Law] 487; 3 Burrows, 1696; 5 Burrows, 2666, 2667; 1 Term R. 11; 2 W. Bl. 963. As to the objection itself, if the facts be properly proved, the rule is, that taking refreshment without leave of the court, is no ground for setting aside the verdict, unless it is done at the expense of the successful party, though it is a misdemeanour in the jury. It is not proved in this case, that the refreshments were furnished at the instance, or with the knowledge or consent of the plaintiff. (3) The cases cited in support of this ground fall far short of it; and even were they more in point than they are, they would not apply to the circuit courts of the United States, on account of their peculiar organization, uniting in the same body both the law and equity jurisdiction. The only practicable rule is to be found in the satisfaction or dissatisfaction of the judges with the verdict. 2 Madd. 368, 381; 3 East, 345.

Joseph R. Ingersoll and Mr. Southard, for defendant.

Richard, Stockton & Ewing, for plaintiff.

WASHINGTON, Circuit Justice. This is a motion made by the defendant, to award a new trial of the issue directed by this court, sitting in equity; to be tried, and which was tried at the bar of the law side of the court. The issue was devisavit vel non; and the jury have found in favour of the validity of the will. The reasons assigned in support of the motion are: (1) The misconduct, and also the conduct of the jury in making up their verdict. (2) The value of the property in dispute, and because the verdict binds the inheritance. Lastly, because the verdict is contrary to the evidence.

1. In support of the first objection, the defendant has offered the affidavits of some of the jurymen, as well as of the marshal, and of the innkeeper where the jury were confined, which prove that the jury were furnished with refreshments of meat and drink

more than once, either at their own request, or from the mere good will of the innkeeper. These refreshments were furnished and used by the jury before they had agreed upon their verdict; but they were not provided at the request, or with the knowledge of the plaintiff, so far as appears by the evidence. After the jury had delivered in their verdict, and were discharged, the plaintiff ordered a breakfast to be prepared for them, at the same inn where they had been confined, of which they partook; after which the innkeeper made a gross charge against the plaintiff, in which he included in one sum, the cost of the breakfast, and of the refreshments before furnished to the jury, but without distinguishing them, and the bill was paid by the plaintiff. But it does not appear that the plaintiff knew at the time that the refreshments were so charged.

Upon these facts, the court is of opinion, that the first reason assigned for granting a new trial is not supported by the principles of law. The rule long established, and uniformly observed is, that the jury are guilty of misbehaviour, if, after they are sent out, and before their verdict is rendered, they eat or drink without the permission of the court; but the verdict cannot be impeached for that reason, unless it appear that the refreshments furnished were at the expense of the party in whose favour the verdict is found; and where this is the case, the court will not only grant a new trial, but will set aside the verdict so found, as unfit to be spoken of to a second jury. The reason of the latter part of the rule is, to prevent the jury from being tempted to find a verdict against their unbiased sense of the right of the case they are to decide upon, by motives of gratitude or of feeling, for favours, however slight, conferred by either of the parties after they leave the bar. But neither the rule nor the reason of it, applies to this case. The refreshments were not provided at the expense of the plaintiff nor with his privity or consent. Nor does it even appear that when they were furnished, the innkeeper intended to charge the plaintiff with them, or that he supposed he was authorised to do so in consequence of any custom prevailing in this state in similar cases. Neither does it appear that when the bill was paid, the plaintiff knew that refreshments had been furnished the jury; although if the fact had been otherwise, the court is not prepared to say that that circumstance would affect the verdict. As to the conduct of the jury in relation to the verdict. Two of the jurymen have sworn that they differed in opinion from the other ten, and expressed to them their conviction that the will was not a good one, and declared that they could not find in favour of it. That the jury then came into court, and after stating by their foreman that they could not agree, applied to be discharged. This the court refused, and requested the jury to return to their room.

After they had remained together for one night, Skenk, one of the dissenting jurymen, informed his companions that his opinion remained unchanged; but that if he stood alone, he would not hold out against the other eleven. They were all, however, anxious to find a verdict, and Skenk at length said that he was willing to return into court, and to let the foreman deliver a verdict for the plaintiff; and if the jury were not polled, he would let the verdict pass, but that if they were polled, he should declare his dissent; nevertheless, if after that the jury should be again sent out, he would agree to the verdict. The jury then came in, were polled, and Skenk declared his dissent from the verdict. The jury being again sent out, they agreed upon a verdict, returned into court, were again polled, and each juryman answered that he agreed to the verdict in favour of the plaintiff. No fraud or improper conduct appears to have been practised on the jurymen, collectively or individually, by any person, with a view to deceive or mislead them. The question then is, ought a new trial to be granted upon this state of facts? We think not.

The affidavits of jurymen stating their dissatisfaction with the verdict at the time it was rendered, the motives which influenced their conduct and induced them to submit to its being so rendered, and thus to contradict what they had openly agreed to in court, ought never to be tolerated. What the foreman, who is called upon in the presence of his associates to pronounce the decision of the whole body, declares that decision to be, ought not to be afterwards contradicted by some of that body; unless it can be made satisfactorily to appear that the foreman was mistaken in delivering the verdict, or stated it differently from what it really was. It would be a most pernicious practice, and in its consequences dangerous to this much valued mode of trial, to permit a verdict, openly and solemnly declared in court, to be subverted by going behind it and inquiring into the secrets of the jury room, to find out from some of the members of that body, what was the process by which they or others had come to the result declared by their verdict. See Comb. 14; Sayer, 100. But if, in ordinary cases, it would be dangerous to allow jurymen, possibly after they had been tampered with, to criminate themselves by giving such evidence; how much more is it to be reprobated, when the faithfulness of the report made by the foreman being called in question, and each juryman being required to say, (and he says it under the sanction of his oath first made) whether he agrees to the verdict so pronounced, he answers in the affirmative? After openly declaring that he does agree to it, any subsequent declaration to the contrary, though upon oath, is inadmissible; and if he be so lost to all sense of propriety as to be willing so to contradict himself, the court ought not to permit him

to do it. But admit, for a moment, that evidence from such a source is proper; the court cannot perceive that that which is given in this case discloses any legal reason for setting aside this verdict or for granting a new trial. Two of the jurymen were of opinion that the will was not valid, but yet were willing that the foreman should report the finding of the whole body to be in its favour, in case the jurymen should not be called upon, each man to speak for himself. Upon that occasion, those jurymen declared their dissent. Being sent back by the court with a recommendation to discuss and reconsider the subject, Mr. Skenk, and perhaps the other dissenting juryman, agreed to find in favour of the bill, if the discharge of the jury, which was first to be applied for, could not be obtained. The application having been made and rejected, and the jury remanded to their room, the verdict was agreed to by all the jurymen, and they severally declared in court that they did so. There was no deceit or misrepresentation practised upon the dissenting jurymen, to lead them to surrender their former opinions. The fair conclusion to be drawn from these facts is, that although those jurymen differed at first from their associates, and to the last preferred giving no verdict if it could be avoided, yet that their opinions were not so clear upon the evidence as to forbid the conscientious surrender of them to the judgment of so large a majority of their body. Mr. Skenk states in his affidavit, that when the jury were sent out the last time, they all agreed upon a verdict, and that they so answered upon being polled in court. The theory of jury trials must necessarily imply a principle of compromises and concession, amongst the members of that body. In cases of conflicting evidence, where the credit of the witnesses must be weighed and decided upon, or where damages are to be assessed for the measure of which no legal rule is prescribed; it is inconceivable that twelve men should arrive precisely to the same result, unless upon the principle just stated. This has been called by the defendant's counsel a chance verdict, because the agreement of the dissenting jurymen to unite in it, was to depend upon the decision of the court not to discharge the jury. This may be in part true; but the chance was not to decide whether the verdict should be for the plaintiff or for the defendant, (which would have met with the severe reprobation of the court,) but whether they should find a verdict or not. If the dissenting jurymen preferred the latter, it is no objection to the former, if in fact, they agreed to the verdict in case their wish to be discharged should be disappointed.

2. The next reason assigned for the new trial is, the value of the property in dispute; with the additional circumstance that the inheritance will be bound by the verdict. A number of English cases have been cited upon this point, which, it is contended, prove

that under such circumstances it is almost a matter of course to direct a re-trial of the issue. If this be so, we can only say that the reasons which may have produced such a rule are inapplicable to the circuit courts of the United States, organized as they are. In England, as in many of the states of this union, the chancery and common law courts are entirely distinct and unconnected; and if the chancellor should find it necessary to have a fact material to the right of the cause ascertained by a jury, he is obliged to send an issue to one of the law courts for this purpose, and the only information which he can obtain of the circumstances which attended the trial, is from the report and notes of the judge, before whom it took place. But the only motive for directing the issue is, to inform the conscience of the chancellor; and unless he is, or ought to be satisfied, by the report made to him of the trial, he very properly sends the issue back to be re-tried. If he be satisfied with the verdict, he will not direct another trial, unless under very peculiar circumstances, and certainly never as a matter of course, in any case. The judge who tried the cause may certify that he is satisfied with the verdict, and yet, the chancellor, notwithstanding he has not the same opportunity of forming an opinion as to the correctness of the verdict, may not think that he ought to have been satisfied. But the judges of this court, who direct the issue for the purpose of informing their consciences, superintend also the trial of it. They have the same advantages which the law judge has in England of hearing the viva voce evidence of the witnesses; of observing their deportment, as well as that of the jury; and of attending to the strictures of the counsel upon the evidence given in their presence. If under these circumstances, they are satisfied that the verdict is warranted by the evidence, upon what rational ground can they direct another trial? Would a second verdict similar to the first do more than satisfy their consciences? and if it should be different, is it probable that the judges would be satisfied?

The rule then contended for by the defendant's counsel (if indeed it be a rule of the English court of chancery) would, in its application to the circuit courts of the United States, be absurd and irrational, and such a one as we could not consent to adopt. But we do not think that the counsel are at all supported by the cases they have relied upon, whether decided before, or since the American Revolution. Without reviewing those cases in detail, we state, as the result of our examination of them, that there is not one, either English or American, which comes up to the point contended for. It will be seen by a careful investigation of all the cases, that although the value of the property in dispute, and the binding effect of the verdict upon the inheritance are spoken of as influencing the decision, yet others are associated

with them, which have a particular and a sensible bearing upon the subject: such as that the interests of third persons were involved; that the parties had not sufficient time to investigate the title; doubtful titles involved; the discovery of new evidence; the dissatisfaction of the law judge, or of the chancellor, with the verdict; as well as other circumstances, which it will be seen existed in the cases, and were noticed by the chancellor in delivering his opinion. After this examination of the reasons mainly relied upon for a re-trial of the issue, we come to the third ground, which was not so much pressed, but which we think deserving of the highest consideration.

3. Is the verdict warranted by the evidence? or in other words, ought we to be, and are we satisfied with it? Speaking for myself, I must declare that I am satisfied. But my brother who sat with me upon the trial of the issue, authorizes me to say that he is not entirely so. This difference of opinion, upon a question which conscience alone can decide, is conclusive to induce my acquiescence in the motion. As a man, I am satisfied with the verdict; but as a judge, I ought not to be satisfied, unless the court is so. Let a new trial be awarded, upon payment of the costs of the former trial.

[In Case No. 6,140 a bill in equity was filed beginning the present suit. A plea to the jurisdiction, that defendants were not properly served with process, was supported, and the plaintiff given leave to amend. In Case No. 6,143 a demurrer to the bill for want of parties was sustained, and the plaintiff again amended. In Case No. 6,141 an issue devisavit vel non was tried, and a verdict rendered for the plaintiff.]