## COLEMAN vs. THE STATE.

1. It is no excuse for an assault, that the party assailed says, that if assailed, it will be at the risk of the assailant.

2. A juror's oath cannot be received to impeach his verdict.
3. Newly discovered evidence, if merely cumulative, is not a sufficient ground for a new trial.

Assault with intent to murder, from Fayette county. Tried before Judge BULL, at September Term, 1858.

This was an indictment against William Coleman and Hardy Richardson for an assault with intent to murder one Jackson Grizzard.

The defendants severed, and Coleman was put upon his trial, and the following is the

*Brief of Evidence. For the State.*

*Jackson Grizzard*, the prosecutor, testified that on the last day of December, 1855, in Fayette county, he was going on the road and came in sight of the grocery. Some men were in the road before the grocery, who, when witness and Daniel D. Mims came in sight, raised a halloo. When witness came near the grocery, defendant and Hardy Richardson came out of the grocery, and came meeting witness and Mims. Coleman had his arms folded on his breast—had a weight—witness thought a four pound iron weight. He threw the weight and struck witness on the side—nearly knocked the breath out of him—witness caught on his horse's wethers, when Coleman struck him with a rock or weight on the shoulder, and jerked witness off his horse, and he and Richardson commenced stamping him : that is the last he recollects, till some time in the night he came to, and found Dr. Wilson standing by his bed. The assault was made about one o'clock in the day. Witness was confined to his bed some five or six weeks—gave defendant and Richardson no provocation—had not spoken, only nodded his head when they met.

*Cross-Examined.*—The difficulty occurred fifty or sixty yards from the grocery in front of Walker's gate.

Walker's house is some twelve or fifteen steps from the grocery. Defendant and Richardson met witness and Mims at the gate—witness was going along on his horse in a walk, when he received the lick; when Coleman passed Mims he turned and threw the weight. Witness did not tell Willis Baker at the school-house, that day, that he was going down to Red Oak to make a light hole through Coleman. There had been a fight the day after Christmas between witness and Coleman—Coleman was some six or eight feet from witness when he threw the weight.

*David D. Mims* testified, that when he and Grizzard got in sight of the grocery, some men commenced to halloo. When they got nearer, Coleman and Richardson came meeting witness and Grizzard—as Coleman passed witness he threw the weight and struck Grizzard on the side —Grizzard fell on his horse's wethers and Coleman pulled him off. Witness then got down and Richardson approached with a weight in his hand—witness told him not to strike him and he did not. Richardson then kicked up against the palings saying he was one of the best men. Witness then turned to the others who were fighting— other persons came up and took them off. Richardson had also jumped on the old man. Coleman's brother requested witness to assist in getting them apart, and he did so. Witness and Grizzard's son, carried him home —he appeared to be insensible and badly hurt. Witness saw the weight before Coleman threw it—thought it a four pound weight—saw no attempt on the part of Grizzard to strike or fight—Coleman was fighting him—Grizzard appeared to be helpless.

*Cross-Examined.*—Saw Coleman and Richardson both striking Grizzard—does not think he saw them both strike at the same time.

*J. J. Cook* testified, that he was at Red Oak on the day of the difficulty—saw Mims and Grizzard coming along the road. Richardson got on a stump and made some

Coleman vs. the State.

kind of a noise, then went into the grocery—saw him and Coleman come out and go down the road, Coleman in front. They met Grizzard and Mims—saw Coleman throw at Grizzard—heard the lick—did not see the instrument—they seemed to pull him off his horse. Coleman and Richardson then both struck him right smart—does not think they were both on him at the same time.

*Cross-Examined.*—Thinks Coleman was fifteen or twenty feet from Grizzard, when he threw the weight—heard it told that day in Coleman's presence, that Grizzard was going by there to Luck's—the grocery was in the way to Luck's.

*Dr. Jno. S. Wilson* testified that he was called to see Grizzard on the 1st January, 1856—found some two of his ribs broken on the left side—some small bruises about the abdomen—saw him two or three times afterwards—he was down some two or three weeks, probably longer.

## Evidence for Defendant.

*Raymond Coleman* testified that he saw the difficulty. Grizzard was coming up the road, and defendant was going down, and they met at Walker's gate. Defendant lived at Walker's—had started there when they met—defendant raised up his head and said, "how do you do, gentlemen?" Grizzard checked his horse and put his hand in his left coat pocket—turned towards defendant, pulled his hand out, and about that time they went to fighting—Coleman pitched at him—did not know whether he threw anything or not. When Grizzard pulled out his left hand, he put his right into his right pocket. On that morning heard Baker say in the presence of defendant, at the grocery: "Boys, look out, the Grizzards said they are coming down and would blow day-light through you." Defendant struck at Grizzard—Grizzard got off his horse, and they went to fighting. Richardson caught defendant by the arm or shirt and jerked him back. Grizzard

6

walked off some ten feet—Richardson then went up to him, and jumped on. him and downed him. Grizzard appeared to be going back.. Defendant was ten or twelve feet from Grizzard when he threw.

*Cross-Examined.*—Saw the weight—one of the weights about the grocery—Baker's statement about the Grizzards was about 10 or 11 o'clock in the morning—thought Coleman's blows were light, but Richardson's were severe— saw Richardson throw a weight at Thos. Grizzard.

*John A. Adams* testified, that he saw the difficulty—saw the parties meet—Coleman said, "how do you do, gentlemen?" Grizzard seemed to throw himself on his nag as if he meant to draw something out—with that Coleman struck him—Grizzard stayed on his horse till Coleman took him off—Richardson pulled Coleman off and took his place. Heard Baker tell Coleman that the Grizzards said they were going by home to prepare themselves, and that they would be down and make day-light shine through them. Heard Grizzard say afterwards, that he did not blame Coleman, and was sorry it had ever taken place—was within ten or fifteen feet of the parties when the fight took place.

*Mrs. Walker* testified, that she was standing in her piazza and saw Coleman meet Grizzard and Mims—he said, "good morning, gentlemen"—Mims spoke but Grizzard did not—stopped and turned the head of his horse towards the house—had the bridle in his left hand—put his right hand in his bosom—dropped it and put in his left hand, and she saw something strike him—Coleman went up to him and he came off his horse—don't know whether he got off or was pulled off—they then went to fighting—Coleman, with an oath, asken him if he would crowd him again—Grizzard replied he never would— Richardson came up and told Coleman that was enough —they then left off—the crowd gathered round and witness saw no more. Grizzard went to his horse—his son

Thad. went to help him—he objected to his helping him, saying he hurt him, and got on the horse himself, and went off. Mims staid sometime talking after Grizzard left. Coleman was staying at witness' house.

*Cross-Examined.*—Shortly after the difficulty witness did say that if she had known that Coleman was going to do so, she would not have let him go up. She said this, because she was sorry the fray took place.

*Dennis Baker* testified, that he was at the school-house that day—had not heard Grizzard use any threats against Coleman—did not, on that day at the grocery, tell or say in the presence of Coleman, any such thing as blowing day-light through him—told them he had heard Joseph Grizzard say that they were coming down there, and that if any of them jumped on them, they would do it at their own risk.

*Cross-Examined.*—Did not tell Miss Ann Coleman on the day after the difficulty, or the same day, " that if Coleman had killed Grizzard, he knew enough to clear him."

*J. J. Cook,* re-examined. Heard Baker tell Coleman and others, at Red Oak, that he had heard Joseph Grizzard say, he was coming down, and that if any of them jumped on him, they would do it at their own risk.

*William Cromby* testified, that he heard Raymond Coleman say, that if it had not been for him, he believed they would have killed the old man Grizzard. Heard Grizzard say in the conversation testified to by Adams, that he blamed others more than he did Coleman—that was his remark.

The jury found the defendant guilty, whereupon his counsel moved for a new trial:

1st. Because the verdict is contrary to the law and evidence.

2nd. Because the presiding judge erred in not permitting prisoner's counsel to ask Dennis Baker what gave

rise to the conversation at the school-house as to the threats of the Grizzards against prisoner.

3rd. Because the jury who found the verdict, were not agreed—it being the verdict only of a majority, to which a minority did not assent, as appears by affidavit of one of the jury.

4th. Because of newly discovered evidence.

The court refused the motion for a new trial, and defendant excepted.

WHITAKER & BATES, and OVERBY & BLECKLY, for plaintiff in error.

Sol. Gen., *contra.*

*By the Court.*—BENNING, J., delivering the opinion.

Was the court right in refusing the new trial? We think so.

As to the first ground of the motion for a new trial, we think there was a plenty of evidence to support the verdict.

As to the second—

1st. The "conversation" itself, at the school-house, was not material. It is no justification or palliation of an assault on a man, that he says, that if he should be assailed, it will be at the risk of the assailant. And if the conversation itself was not material, how could what "gave rise" to it, be material?

Besides, the party assaulted, *Jackson* Grizzard, was not present at the conversation. How could any thing in a conversation among other persons, justify an assault on him? At least, there is nothing in the record, to show how it could.

As to the third—

2nd. The affidavit of a juror, made after the rendition

of his verdict, is not admissible to impeach the verdict. This is well settled.

As to the fourth and last ground—

This was the newly discovered evidence of Bartly Walker and his wife. This evidence was merely cumulative, if not, also, immaterial.

Judgment affirmed.