### JOSEPH SHELDON *v.* RALPH PERKINS.

*Division Line.    New Trial.    Jurors.    Evidence.*

While one is in possession of land in his own right as owner, he is to be regarded as owner, though he do not possess the legal title, and his acquiescence in a boundary line is as binding as though the legal title had been conveyed to him.

A motion for a new trial is addressed to the discretion of the county court, and their decision upon it, whether right or wrong, cannot be revised on exceptions. But if the court improperly reject evidence offered in support of the motion this would be an error revisable on exceptions.

An affidavit of one of the jurors offered not to show improper conduct in the jury, but merely upon what grounds the verdict was rendered, held inadmissible.

TRESPASS, for breaking and entering the plaintiff's close, in Fairhaven, on the 15th December, 1857, and cutting and carrying away certain trees therefrom.  The plaintiff's writ was dated the 23d of January, 1858.  Plea, not guilty, with notice, setting forth certain special matter relied on in defence.  Trial by jury at the September Term, 1864, KELLOGG, J., presiding.

On trial, the title of the plaintiff to a lot of land in Fairhaven called the Sheldon lot, was fully established, and was not questioned ; and the title of Laura Perkins, a daughter of the defendant, to a lot of land in Fairhaven called the Hamilton or Perkins lot, situated east of and adjoining the said Sheldon lot, was also fully established, and was not questioned.   The controversy between the parties in this case was in respect to the true location of the dividing line between these two lots,—the plaintiff claiming that the south-east corner of the Sheldon lot and the south-west corner of the Hamilton or Perkins lot were one and the same corner, and that the said corner was at a certain hemlock tree turned up by the roots, and standing on the top of a ridge,—and the defendant claiming that the south-west corner of the said Perkins lot was at a stake and stones standing about six rods west, and about two and one-half rods south, of the said hemlock tree corner, under the ridge or hill, and on the east side of a swamp.

The plaintiff claimed both that the true original location of the south-east corner of his lot was at the said hemlock tree, and also that, even if it was not in fact originally located there, he had gained a title to the land bounded on the east by the line running northerly

in the course from the hemlock tree corner, by occupancy on his part up to that line, and on the part of the owners of the said Perkins lot, by a recognition of, and acquiescence in, that line as the true dividing line between the two lots for such a length of time as would give to him a perfect title up to that line.

In reference to this last mentioned claim, the plaintiff, as a witness for himself, testified as follows, viz : " There is a line there in that direction," (northerly from the hemlock tree corner,) "leading past the land which Mr. Perkins now owns, which we made and marked in 1836. Mr. Hamilton or Mr. Whipple then owned the land now owned by Mr. Perkins. This line was the subject of conversation between me and Mr. Hamilton while he held the title to the Perkins lot and was occupying it. Mr. Whipple occupied the lot after Mr. Hamilton. That line and corner was recognized as the line and corner between our lots by me and Mr. Whipple. Mr. Whipple cut up to one side of the line, and I to the other, and there never was any dispute between us about the line for twenty years. I think Mr. Whipple was in possession of the Perkins lot for from fourteen to eighteen years,—I don't know exactly how long."

Cyrus C. Whipple, a witness for the plaintiff, testified as follows, viz : " I took possession of this Perkins lot in the winter of 1836, under a contract to purchase, from Mr. Hamilton. I occupied it, and was in possession of it, until the fall of 1850, when I sold it to Ralph Perkins, the defendant. Mr. Hamilton pointed out the lines of this lot to me at the time I purchased it. He took me to the corner which is called here the hemlock tree corner,—where a hemlock tree had been turned up by the roots, and we started from that corner. I think he told me at the time that there was some dispute about the corner, but that he owned up to there at any rate, and might own some farther. He told me about where the lines run. When I was occupying that lot I claimed to the lines running east and north from the hemlock tree corner. When I made my contract to purchase of Mr. Hamilton, I knew nothing about the stake and stones corner, and he did not point that corner out to me. He told me that there was some dispute about the hemlock tree corner,—I think he told me that it was with Mr. Ranney and Mr. Gilbert.

On the part of the defendant, it appeared that the said Perkins lot

was conveyed by Hiram Hamilton to Laura Perkins, by deed dated April 22d, 1852. The said Hiram Hamilton, being called as a witness for the defendant, testified, among other things not bearing on the last mentioned claim of the plaintiff, as follows, viz : "I never knew of any one claiming east of this corner, (the stake and stones corner claimed to by the defendant,) until after or at the time of the arbitration between Ranney and Perkins, some ten or twelve years ago. I bargained the land to Whipple some four or five years after I sold the timber to Clemons. I sold the land to Whipple by the acre, and he was to give me ten dollars per acre. I showed the line to Whipple,—a line running from the corner under the hill east,— the same south line to which Perkins now claims. A year or two afterwards I went on to the lot and again showed the line to Whipple. I had then learned that Ranney claimed that the upper corner was the true corner, and I went to Mr. Ranney's to have him show the corner that he claimed to, and his son Oliver went with us, and showed the corner that they claimed to. I think I never had seen this corner on the hill before that time. I deeded the land to Laura Perkins, agreeably to an understanding with Mr. Whipple. I did not know that Mr. Sheldon claimed up to this corner prior to the arbitration between Perkins and Ranney. I don't know that I had anything to do with the lot while Whipple was in possession of it. * * * I received the pay for the land from Mr. Whipple, and nothing from any one else. I always supposed that I owned to the lower corner."

The defendant, being called as a witness for himself, testified, among other things not bearing on the last mentioned claim of the plaintiff, as follows, viz : "Laura Perkins is my oldest child. She gave me permission to cut timber on the premises conveyed to her by Mr. Hamilton. * * * I made the bargain for Laura with Mr. Whipple for this land. I think it was in 1850, and that the deed was given about two years afterwards. After I made the bargain, right off, the same season, I cut some tamaracks and ash for hooppoles on this disputed piece. I also sowed two and one-half acres of wheat on the lot,—a portion of it being on the land in dispute,—a little piece of it. I have cut timber and firewood from the lot since. I have always claimed my south-west corner to be down under the

hill where the stake and stones are, and the south line to be a straight line running through from that. When I made the trade with Whipple I did not go on to the lot with him."

The plaintiff, in giving rebutting evidence, re-called Cyrus C. Whipple, who testified as follows, viz : "Ralph Perkins worked for me before I sold this lot to him. He was on the lot with me, and I discovered that the south line of my lot, or the line running from the hemlock tree corner between my lot and the Hurd lot, had been newly marked, and I spoke of it to Perkins, and he said that Macomber (a surveyor) had run it out for Gilbert. It was understood between us that the line was run from that corner. I think I always told Mr. Perkins that I never claimed any farther than the line running from the hemlock tree for my south line, for that was the tree which Mr. Hamilton showed to me for the corner. My conversations with Perkins about the line were before he purchased the lot."

In respect to the testimony above detailed, the defendant requested the court to charge the jury that "if Hamilton, at the time he first went on to the lot with Whipple, did not know of the existence of this hemlock tree corner claimed to by the plaintiff, and did show Whipple the lines leading from the said stake and stones corner, then the occupancy by Whipple of the Hamilton lot would enure to the benefit of said Hamilton to cover all the land embraced within the original survey of that lot,"—the title under said survey having passed to, and become vested in, said Hamilton, before the commencement of the said occupancy,—"as the said Hamilton was to sell the lot to said Whipple by the acre ; and that no acquiescence on the part of Whipple in a dividing line leading north from the said hemlock tree corner as claimed to by the plaintiff could commence so as to be binding on Hamilton until the survey of the lot was made from Hamilton to Whipple, which was two or three years after Hamilton went on to the lot with Whipple for the purpose of showing the corners and lines of it to him." The court declined so to instruct the jury, but, upon this point, did instruct the jury as follows, viz : That if, after Hamilton sold the Hamilton lot to Whipple, and Whipple went into possession of the same under the said contract of sale, there was a continuous period of fifteen years during which the line running north from the said hemlock tree corner was recognized and

36

treated, or acquiesced in, as the true dividing line between the two lots by the adjacent land owners,—that is, by the plaintiff on the one side, and by Whipple and his successor in the ownership of the Hamilton lot, on the other side,—that line should be considered as binding upon Whipple and his successor in the ownership of the Hamilton lot, in or under whose right the defendant justified the alleged acts of trespass, notwithstanding the jury might find that the original and true dividing line between the two lots was in a different place, as claimed by the defendant. To the refusal of the court to charge upon this point, agreeably to the defendant's request, and to the charge as given, the defendant excepted. The jury returned a verdict in favor of the plaintiff for $21. damages.

After verdict, the defendant filed a motion for a new trial. On the hearing on said motion, the defendant offered as evidence in support thereof the affidavit of Benjamin W. Burt, one of the jurors of the jury by which the said verdict was returned, stating that the verdict was based upon the ground that the line claimed by Joseph Sheldon had been recognized and treated as the dividing line by the grantors of Laura Perkins for more than fifteen years before the excution of the deed to Laura Perkins. The plaintiff objected to the reception of this affidavit as evidence,—claiming that the same was inadmissible,—and the said objection was sustained. To this decision of the court the defendant excepted. No other testimony except the said affidavit was offered in support of the motion for a new trial, and the said motion was thereupon denied. To which the defendant excepted.

*H. G. Wood* and *E. N. Briggs,* for the defendant.

The exceptions show that the line claimed by the plaintiff did not exist prior to 1836, and that Hamilton, in whom the title of the Perkins lot then was, did not know of the existence of this line, or that the plaintiff claimed to own any of the premises in dispute until some ten or twelve years ago, when he had conveyed to Laura Perkins. Whipple went into possession under a contract to purchase, in February, 1836, but did not *in fact* purchase until a year or two after, when a survey was made, and the *quantity* and *price* ascertained. During the time that intervened between February 7th, 1836, and the time when the survey was made in 1837 or 1838, *at*

*least* Whipple must be treated as the *tenant* of Hamilton, and his possession of the premises or *any part* of them, must inure to the benefit of Hamilton, and no recognition by Whipple of a *wrong* line would be held binding upon Hamilton.

*If Hamilton, at the time Whipple went into possession of the premises, pointed out to Whipple the corners and lines now claimed by the defendant* as the boundaries of the lot, the possession by Whipple of *any part* of the lot would be extended by *construction* to cover *all* the land embraced in Hamilton's title, especially if neither Whipple nor Hamilton knew that the plaintiff claimed to a different line or corner, and the court should have so charged the jury.

The motion for a new trial was improperly denied.

The affidavit of the juryman was admissible for the purpose for which it was offered.

*Prout & Dunton,* for the plaintiff.

As a legal proposition, it is unquestionable, in regard to a dividing line between lands, that when adjoining *proprietors* recognize or acquiesce in a line, whether it is the true one or not, and occupy accordingly for fifteen years, that the line so acquiesced in will be treated as the actual line, and will not be disturbed. *Jackson* v. *Ogden,* 7 Johns. 238 ; *Jackson* v. *Freer,* 17 Johns. 29 ; *Jackson* v. *Van Corlaer,* 11 Johns. 123 ; *Hunt* v. *Johnson,* 19 N. Y. 279 ; *Beecher* v. *Parmelee,* 9 Vt. 352 ; *Burton* v. *Lazell et al.,* 16 Vt. 158 ; *Ackley* v. *Buck,* 18 Vt. 395.

The charge was in accordance with this principle. The testimony in the case does not justify the charge requested by the defendant.

The motion for a new trial was properly denied. *Bullock* v. *Beach,* 3 Vt. 73 ; *Newton* v. *Booth,* 13 Vt. 320.

The affidavit of the juror was not admissible to affect the verdict. *Downer* v. *Baxter,* 30 Vt. 467; 11 Cush. 337 ; 5 Hill, 560 ; 2 Tidd, 905. Also see *Ross* v. *Bank of Burlington,* 1 Aiken, 43 ; *Morse* v. *Crawford,* 17 Vt. 499.

POLAND, Ch. J. The general doctrine of the judge's charge, that if the line to which the plaintiff claims had been recognized, treated and acquiesced in for a continuous period of fifteen years, by the plaintiff on one side, and the predecessors in title of the defendant

or his daughter on the other, that the line would thereby become established and binding between them, is not denied by the defendant's counsel to be the law. The alleged error of the court below consists in not acceding to the defendant's request to charge. The request assumes facts as true which the exceptions do not show there was any evidence of, in order to avoid the effect of an acquiescence in the line by Whipple for a part of the time he was in possession of the land now owned by the defendant's daughter. That is, that Hamilton contracted to sell the land to Whipple by the acre, that it was subsequently to be surveyed and measured to ascertain the quantity, and that this was not done for two or three years after Whipple entered into possession, and that until this was done, Whipple should be treated as the tenant of Hamilton, and having no power to acquiesce in any boundary line so as to bind his landlord.

Nothing of this appears in the exceptions, and therefore any request for a charge based upon them cannot be regarded. The case shows that Whipple purchased the land of Hamilton, entered into possession, and occupied the land as his own for the whole period till he sold to the defendant in 1850. He never had a deed from Hamilton, but two years after he sold the land to the defendant, the land was deeded by Hamilton to the defendant's daughter.

While Whipple was thus in possession of the land, in his own right as owner, we think he is to be regarded as the owner, and that his acquiescence in a boundary line is as binding as if the legal title had been conveyed to him.

If the facts were true which are implied in the defendant's request to the court, and still Whipple in fact during the time, conceded and acquiesced in the plaintiff's line, it is by no means clear that this part of the time should be deducted from the whole period of his occupation. If he went in under a contract to become the owner of the land, and that contract was executed so that he did in fact become the owner, and he occupied as the owner for the whole time, we see very little reason for dividing the time. Although the legal title remained in Hamilton, he held it in trust merely for Whipple, who was the real owner, and Whipple really occupied the land as his own, and not as Hamilton's.

The evidence was contradictory as to the occupation, and acqui-

Sheldon *v.* Perkins.

escence in the line. The plaintiff's evidence tended to prove that it was for more than fifteen years. The defendant's evidence tended to show that it was for a less period than fifteen years.

This was wholly a question of fact for the jury to decide, and unless all the evidence was one way, it was proper for the court to submit it to them to determine.

The motion for a new trial was addressed to the sound discretion of the county court, and their decision of it, whether right or wrong, cannot be revised on exceptions. This has often been decided by this court.

The only mode of bringing this question before this court is by a petition for a new trial, and if it were thus properly before us, it would be quite impossible for us to say upon the evidence detailed, that the verdict was so palpably and clearly contrary to the general tendency of the evidence, as to justify overturning the verdict.

The defendant also offered in aid of his motion for a new trial, the affidavit of one of the jurors, to show upon what ground the verdict was rendered, which affidavit the court refused to receive as evidence. If the court improperly rejected evidence in support of the motion, it would doubtless be an error properly revisable on exceptions.

It has long been settled in this state that affidavits of jurors will not be received to show any impropriety in the conduct of the jury, or improper mode of arriving at the verdict, in order to set it aside, and this is now the general opinion in the courts of all the states so far as we know. This affidavit was not offered to show improper conduct in the jury, but merely to show upon what ground the verdict was rendered.

But in our judgment it would be productive of great mischief to receive *ex parte* affidavits of jurors, after they have separated, for such a purpose. Where a case is submitted to a jury on various grounds, and where perhaps the result is not perfectly satisfactory to all of them, to allow them to be severally catechised after they have separated and had interviews and conversations with parties and counsel, and their affidavits brought into court to explain their verdict, would produce the greatest uncertainty and embarrassment. If the state of the case is such as to make it proper or important to

know the ground upon which a verdict of the jury is given, the proper course is to suggest it to the court so that it may be learned from the jury in open court, while they are together and under the control and direction of the court.

The affidavit was properly excluded.

The judgment is affirmed.