## R. E. KEITH v. STATE.

No. A-1128.    Opinion Filed April 16, 1912.

(123 Pac. 172.)

TRIAL—Impeachment of Verdict—Affidavit of Jurors.  Unless required by statute, a verdict cannot be impeached by the affidavits or testimony of jurors, showing misconduct on their part in arriving at the verdict.

(Syllabus by the Court.)

*Appeal from Superior Court, Muskogee County;*
*Farrar L. McCain, Judge.*

R. E. Keith was convicted of violating the prohibitory law, and appeals.    Affirmed.

*G. W. Wheatley,* for appellant.

*Smith C. Matson,* Asst. Atty. Gen., *W. E. Disney,* Co. Atty., *P. A. Galvin,* and *Alvin S. Mahoney,* for the State.

FURMAN, P. J.    There is no question in this case as to the sufficiency of the evidence to sustain the verdict, and but one proposition is submitted in the brief of counsel for appellant, and that is that the court erred in refusing to allow the appellant, by taking the testimony of two jurors, to show the manner in which the jury arrived at its verdict.

It has been repeatedly decided by the unanimous opinions of this court that the affidavits of jurors cannot be received for the purpose of impeaching their verdict.

In the case of *Vanderburg v. State,* 6 Okla. Cr. 486, 120 Pac. 301, Judge Doyle, speaking for the court upon this very question, said:

"It will be sufficient to say on this question that jurors will not be allowed to impeach their verdict by their affidavits or testimony after they have been discharged."

In the case of *Spencer v. State,* 5 Okla. Cr. 11, 113 Pac. 226, this court said:

"Jurors cannot be heard to impeach their verdict, unless expressly authorized to do so by statute, and then only in the manner provided by statute. When jurors are impaneled, they are sworn to decide the case submitted to them according to the law and the evidence. For a juror to make an affidavit that he has violated his oath and rendered a verdict upon any other ground than the sworn evidence in a case places him in contempt of court. * * * If, after being discharged and mingling with the public, jurors are permitted to impeach verdicts which they have rendered, judgment based upon verdicts of juries would rest upon a very uncertain foundation. Litigants against whom verdicts had been rendered would be continually importuning jurors, and attempting to obtain from them affidavits upon which such verdicts could be assailed. This would result in perjury and bribery. There would be no end of litigation in cases tried before juries. Therefore, for the security of litigants, and to prevent fraud and perjury, as well as for the protection of the jurors themselves, courts will not allow jurors to impeach their own verdict, unless they are permitted to do so by the express provisions of the statute. We have no statute permitting this to be done."

In the case of *Petitli v. State,* 2 Okla. Cr. 134, 100 Pac. 1123, this court said:

"This question was before the Supreme Court of Louisiana in a civil case. That court said: 'A second bill of exceptions was taken to the refusal of the judge to permit the jury to prove that their verdict was really for the plaintiff, and that the word "defendant" was written in the verdict through error, instead of "plaintiff." * * * The ruling was correct.' *Chevallier v. Dyas et al.,* 28 La. Ann. 360. In another civil case, the Supreme Court of South Dakota said: 'Affidavits of jurors will not be received to impeach their verdicts, unless authorized by statute, and only then upon the grounds and in the manner permitted by the statute.' *Gaines v. White, Sheriff,* 1 S. D. 434, 47 N. W. 524. The rule is clearly stated and the authorities are cited on page 730 of Abbott's Trial Brief in Criminal Causes (2d Ed.), as follows: 'After Separation.—After the verdict has been rendered, and the jury, after being discharged, have separated, they cannot be recalled to amend their verdict. But the mere announcement of their discharge does not, before they have dispersed and mingled with the bystanders, preclude recalling them. *Sargent v. State,* 11 Ohio, 472; *Mills v. Commonwealth,* 34 Va. 751; *People v. Lee Yune Chong,* 94 Cal. 379, 29 Pac. 776; *State v. Daw-*

*kins,* 32 S. C. 17, 10 S. E. 772; *Allen v. State,* 85 Wis. 22, 54 N. W. 999. And see civil authorities in Abbott's Civil Trial Brief (2d Ed.) div. 8. And that it is reversible error to send out, for further deliberation upon their verdict, a jury in a criminal case who have rendered an incomplete sealed verdict during the night, and have been allowed to separate, see *Farley v. People,* 138 Ill. 97, 27 N. E. 927. * * *' The written verdict of the jury must control. If it had been read to them before their discharge, as the law contemplates, then it would have still been subject to their control, and could have been altered or corrected as they desired, if permitted by the court; or, it could have been returned to them, with directions from the court to retire and continue with the consideration of their verdict. After a jury has been discharged and has mingled with the public, the persons who served on it are no longer a jury, and have lost all connection and control over their verdict. They have nothing more to do with the verdict than any other private citizen. If they were allowed to contradict or impeach the verdict which they have returned into court, the door would be opened to all manner of abuses. All conceivable attempts would be made to cajole, browbeat, and even to corrupt jurors to testify that there was some such mistake made as would require the court to set aside verdicts in many cases. Especially would this be true in verdicts of conviction in criminal cases."

This question was also decided adversely to the contention of counsel for appellant in the case of *Colcord v. Conger,* 10 Okla. 460, 62 Pac. 276. Chief Justice Burford, of the Supreme Court of Oklahoma Territory, quoted from Thompson on Trials, sec. 2618, as follows:

"Upon grounds of public policy, courts have almost universally agreed upon the rule that no affidavit, deposition, or other sworn statement of a juror will be received to impeach the verdict, to explain it, to show on what grounds it was rendered, or to show a mistake in it, or that they misunderstood the charge of the court, or that they otherwise mistook the law or the result of their finding, or that they agreed on their verdict by average or lot."

Chief Justice Burford then proceeded as follows:

"And this statement is amply sustained by a multitude of authorities. In fact, the only courts, it seems, which have made exceptions to this rule, are the courts of Kansas, Iowa, and Ten-

nessee, and they limit the inquiry to matters which do not inhere in the verdict."

We might well rest our decision of this case upon the authorities above cited and reasons hereinbefore given; but in a number of cases now pending before us this question is again raised. We will therefore go into the discussion of this matter more fully than we have heretofore done, with the statement that we will not discuss it again, except for the gravest reasons.

In support of their contention, counsel for appellant cite the following cases: *Perry v. Bailey,* 12 Kan. 544; *Wright v. I. & M. Telegraph Co.,* 20 Iowa, 195; *Fain v. Goodwin,* 35 Ark. 109; *Fredericks v. Judah,* 73 Cal. 604, 15 Pac. 305; *Dixon v. Pluns,* 101 Cal. 511, 35 Pac. 1030; *People v. Azoff,* 105 Cal. 632, 39 Pac. 59; *Weinburg v. Somps* (Cal.), 33 Pac. 341; *Flood v. McClure,* c *Idaho* (Hasb.) 587, 32 Pac. 254; *Griffiths v. Montandon,* 4 Idaho, 377, 39 Pac. 548; *Giffen v. Lewiston,* 6 Idaho, 231, 55 Pac. 545; *Bernier v. Anderson,* 8 Idaho, 675, 70 Pac. 1027; *Paducah Ry. Co. v. Commonwealth,* 80 Ky. 147; *Gordon v. Trevarthan,* 13 Mont. 387, 34 Pac. 185, 40 Am. St. Rep. 452; *Murphy v. Murphy,* 1 S. D. 316, 47 N. W. 142, 9 L. R. A. 820; *Gaines v. White,* 1 S. D. 316, 47 N. W. 142, 9 L. R. A. 820; *Gaines v. White,* 1 S. D. 434, 47 N. W. 524; *Wood v. State,* 15 Tex. App. 135, 44 Am. Rep. 701.

As a matter of first impression, the cases above cited appear to sustain the contention of counsel for appellant; but when the statutes of the states in which these decisions were rendered are examined it will be found that they cannot be considered as authority in this state. For instance, the statute of California (Code Civ. Proc. sec. 657, subd. 2) is as follows:

"Misconduct of the jury; and whenever any one or more of the jurors have been induced to assent to any general or special verdict, or to a finding on any question submitted to them by the court, by a resort to the determination of chance, such misconduct may be proved by the affidavit of any one of the jurors."

It is provided in the Texas Code of Criminal Procedure 1879, art. 777, that new trial in felony cases shall be granted for certain causes therein mentioned. Among the enumerated causes is that set out in subdivision 3, where the verdict is decided by lot, or in

any other manner than by a fair expression of opinion by the jurors; and in subdivision 8, we find the following provision:

"Where, from the misconduct of the jury, the court is of opinion that the defendant has not received a fair and impartial trial, and it shall be competent to prove such misconduct by the voluntary affidavit of a juror; and a verdict may in like manner, in such cases, be sustained by such affidavit."

Section 6896, Comp. Laws 1909, provides:

"A court in which a trial has been had upon an issue of fact has power to grant a new trial when a verdict has been rendered against a defendant by which his substantial rights have been prejudiced, upon his application in the following cases only: * * * 4. When the verdict has been decided by lot, or by any means other than a fair expression of opinion on the part of the jury."

It will be observed that this statute is a limitation upon and not an extension of the common-law grounds for a new trial in criminal cases, and that the statute does not require the granting of a new trial as a matter of right upon the grounds therein stated, but leaves the matter to the discretion of the courts. It nowhere provides that the affidavits of jurors may be received for the purpose of impeaching their verdict; neither does it attempt to state what evidence courts should consider in determining these questions. So we must look elsewhere for any provision of our statute regulating the introduction of such testimony. We find this provision in section 6494, Comp. Laws 1909:

"The procedure, practice and pleadings in the district courts of this state, in criminal actions or in matters of a criminal nature, not specifically provided for in this Code, shall be in accordance with the procedure, practice and pleadings of the common law, and assimilated as near as may be with the procedure, practice and pleadings of the United States or federal side of said court."

We must then look to the common law to settle this question. At common law, it was not competent to impeach a verdict by the evidence of the jurors; and, as our statute does not change this rule of the common law, we feel that we should adhere to it.

We do not deem it necessary to copy the statutes of all the states on this subject, the decisions of which are cited by coun-

sel for appellant; but an examination of these statutes will show that, with one exception, they all, in mandatory terms, require the courts to receive affidavits of jurors for the purpose of impeaching their verdict. The case of *Perry v. Bailey*, 12 Kan. 544, is the exception referred to. Upon an examination of this case, it will be found that the cases cited and relied upon as authorities were rendered in states where the statutes, in express terms, provide for the impeachment of a verdict by the affidavits or testimony of the jurors. We are therefore of the opinion that the case of *Perry v. Bailey, supra,* is not supported by the authorities upon which it rests. We have no statute in Oklahoma requiring that the affidavits of jurors be received for the purpose of impeaching their verdict. Therefore the authorities cited and relied upon by counsel for appellant are not in point.

It is expressly stated in nearly all of the cases cited by counsel for appellant that the settled rule, founded upon considerations of necessary' policy, when not controlled by statute, is that the testimony of a juryman cannot be received to impeach and defeat his verdict. It is true that hardships may arise under the rule forbidding the introduction of the testimony or affidavits of jurymen, for the purpose of impeaching their verdict; and, while it may be that justice may occasionally miscarry, unless such evidence be admitted, on the other hand, to receive such evidence opens wide the door to corrupt practices. The jury will be subjected to influences after they have been dismissed from duty as jurors, to induce them to repent of their verdict and endeavor to revoke it. They would be liable to be tampered with. It would be difficult to place a limit to the corruption such a practice might engender. In addition to all of this, there is another reason why jurors should not be allowed to impeach their verdicts by their voluntary affidavits or testimony. If this were permitted to be done, it would take from the court the power to grant a new trial and give it to the jury. Manifestly this would be inconsistent with the theory of our judicial system, revolutionary in character, and contrary to public policy. In the absence of a statute in this state, directing the introduction of affidavits

and testimony of jurors to impeach their verdict, we do not feel authorized to follow those courts which permit this to be done, when not directed by statute; and we feel that the safer and better plan is to adhere to our former decisions on this subject.

In the case of *Phillips v. Rhode Island Co.*, 32 R. I. 16, 79 Atl. 342, 31 L. R. A. (N. S.) 930, which was decided in 1910, an instructive discussion of this question is presented, and nearly all of the cases on this subject are reviewed. The court there said:

"In *Tucker v. Town Council of South Kingstown*, 5 R. I. 558, 560, the court, speaking by Ames, C. J., said: 'The affidavits of the jurymen as to what took place in the jury room, or as to the grounds upon which they found their verdict, and which were read *de bene* at the hearing, must be rejected; a rule of policy, well settled both in England and in this country, excluding for the security of verdicts, this mode of impeaching them.' The general rule that the affidavits of jurors as to their own misconduct during the trial are inadmissible to impeach their verdict is, we think, supported by the great weight of authority, both in this country and in England. In *Owen v. Warburton*, 1 N. R. 326, where the affidavit of a juryman that the verdict was decided by lot was offered, Mansfield, C. J. (pages 329, 330), said: 'We have conversed with the other judges upon this subject, and we are all of the opinion that the affidavit of a juryman cannot be received. It is singular that almost the only evidence of which the case admits should be shut out; but, considering the arts which might be used if a contrary rule were to prevail, we think it necessary to exclude such evidence. If it were understood to be the law that a juryman might set aside a verdict by such evidence, it might sometimes happen that some juryman, being a friend to one of the parties, and not being able to bring over his companions to his opinion, might propose a decision by lot, with a view afterwards to set aside the verdict by his own affidavit, if the decision should be against him.' "

As was well said by Chief Justice Mansfield, if a verdict can be impeached by the affidavit or testimony of a juror, then in any criminal case tried in the state, no matter how conclusive the testimony and how regular the trial may have been in other respects, it will be in the power of one juror to secure a reversal of a conviction, and at the same time do it in such a manner as to conceal the purpose for which it was done, and thereby exempt

himself from punishment. Such a juror could insist that the amount of punishment should be arrived at by lot, or he could make statements to the other jurors highly damaging to the defendant; then afterwards it would not be necessary for him to file an affidavit as to how the verdict was reached in the case, for, if the right to impeach a verdict by affidavit of a juror exists, the right to have the entire jury summoned and placed on the stand and examined as to what occurred in the jury room also exists; and when a verdict was rendered, as above indicated, such juror might have been the most zealous for conviction, when, as a matter of fact, he was working solely in the interests of the defendant. If this can be done, it places in the hands of a defendant the power to set aside any verdict that might be rendered against him, provided only he can find a juror who will be willing to carry out the program. It may be stated that this is an extreme illustration; but it must be remembered that the extreme case is the test of the rule. We might fill a volume by quoting from authorities supporting our views on this question; but, as it has been decided three times by this court, we do not deem it necessary to quote further from authorities. If any persons, however, desire to investigate the question more fully, they will find that the following cases sustain our position. We have carefully examined each of these cases: *Dana v. Tucker,* 4 Johns. (N. Y.) 487; *Clum v. Smith,* 5 Hill (N. Y.) 560; *Meade v. Smith,* 16 Conn. 346; *O'Barr v. Alexander,* 37 Ga. 195; *Allison v. People,* 45 Ill. 37; *Knowlton v. McMahon,* 13 Minn. 386 (Gil. 358), 97 Am. Dec. 236; *Vaise v. Delaval,* 1 T. R. 11; *Prior v. Powers,* 1 Kebbe, 811; *Jackson v. Williamson,* 2 T. R. 281; *Rex v. Woodfall,* 2 Burr. 2667; *Ward v. Blackwood,* 48 Ark. 396, 3 S. W. 624; *Pleasants v. Heard,* 15 Ark. 403; *Haight v. Turner,* 21 Conn. 593; *State v. Freeman,* 5 Conn. 348; *McCombs v. Chandler,* 5 Har. (Del.) 423; *Bishop v. State,* 9 Ga. 121; *Clark v. Carter,* 12 Ga. 500, 58 Am. Dec. 485; *Mercer v. State,* 17 Ga. 146; *Coleman v. State,* 28 Ga. 78; *Brown v. State,* 28 Ga. 199; *Rutland v. Hathorn,* 36 Ga. 380; *Coleman v. Slade,* 75 Ga. 61; *Jacobs v. Dooley,* 1 Idaho, 41; *Martin v. Ehrenfels,* 24 Ill. 187; *Reins v.*

*People,* 30 Ill. 256; *Dunn v. Hall,* 8 Blackf. (Ind.) 32; *Elliott v. Mills,* 10 Ind. 368; *Sinclair v. Roush,* 14 Ind. 450; *Hughes v. Listner,* 23 Ind. 396; *Haun v. Wilson,* 28 Ind. 296; *Commonwealth v. Drew,* 4 Mass. 391; *Hannum v. Belchertown,* 19 Pick. (Mass.) 311; *Murdock v. Summer,* 22 Pick. (Mass.) 156; *Cook v. Castner,* 9 Cush. (Mass.) 266; *Folsom v. Manchester,* 11 Cush. (Mass.) 334; *Sawyer v. Hannibal & St. J. R. Co.,* 37 Mo. 240, 90 Am. Dec. 382; *State v. Coupenhaver,* 39 Mo. 430; *State v. Rush,* 95 Mo. 199, 8 S. W. 221; *Clark v. Reed,* 5 N. J. Law, 486; *Den v. McAllister,* 7 N. J. Law, 46; *Randall v. Grover,* 1 N. J. Law, 151; *Harrison v. Rowan,* 4 Wash. C. C. 32, Fed. Cas. No. 6,142; *People v. Columbia Common Pleas,* 1 Wend. (N. Y.) 297; *Green v. Bliss,* 12 How. Prac. (N. Y.) 428; *People v. Carnal,* 1 Parker Cr. R. (N. Y.) 256; *People v. Wilson,* 8 Abb. Prac. (N. Y.) 137; *Lafoon v. Shearin,* 95 N. C. 391; *Willing v. Swasey,* 1 Browne (Pa.) 123; *Stone v. State,* 4 Humph. (Tenn.) 27; *Saunders v. Fuller,* 4 Humph. (Tenn.) 516; *Mason v. Russel,* 1 Tex. 721; *Burns v. Paine,* 8 Tex. 159; *Boetge v. Landa,* 22 Tex. 105; *Thomas v. Zushlag,* 25 Tex. Supp. 225; *Sheldon v. Perkins,* 37 Vt. 550; *Edmiston v. Garrison,* 18 Wis. 594.

The judgment of the lower court is therefore affirmed.

ARMSTRONG and DOYLE, JJ., concur