### Ernst Heldmaier v. Otto Rehor.

1.    PRACTICE—*Affidavits of Jurors for Purpose of Setting Aside Ver-
dict.*—It is the settled law in this State that the affidavits of jurors
can not be received for the purpose of showing cause for setting aside
their verdict.

**Action in Case,** for personal injuries. Appeal from the Superior
Court of Cook County; the Hon. JONAS HUTCHINSON, Judge, presiding.
Heard in the Branch Appellate Court at the October term, 1899.
Affirmed. Opinion filed June 19, 1900.

GEORGE W. PLUMMER and WHARTON PLUMMER, attorneys
for appellant.

BRANDT & HOFFMANN, attorneys for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

This is an action for personal injuries. Appellee, who
sues by his next friend, was at the time of the injury an
infant aged two and a half years. He was run over by a
heavily loaded stone-wagon which crushed his leg so that
the limb was subsequently amputated. The wagon was
owned by appellant and driven by an employe named
Jacobs.

There is direct and irreconcilable conflict in the testi-
mony. Evidence introduced in behalf of appellee tends to
show that the boy made his way unattended from the yard

of his parents' residence into the street, and was seen directly in front of the approaching horses; that he was knocked down and rolled under the stone-wagon, until his left leg was brought under the east hind wheel, which ran over it, while the child's body was still under the wagon; that persons seeing the child's perilous position " hollered to the driver to stop;" that the latter was sitting with his elbows on his knees, his head between his hands, and seemed to be asleep; that he made no move to stop the horses, which continued moving slowly "up the hill," and were stopped by one of the witnesses, who shook the driver to awaken him, after the injury had been inflicted.

The driver's statement is that one of his wheels had dropped into a hole in the street, and he was looking back to see whether his load had shifted; that while thus looking back "a fellow hollered there was a child under the wagon; I stopped right away and pulled to the other side of the street." He says that "nobody stopped the horses; I stayed on the wagon." The theory of the defense is that the child ran out into the street as the wagon, which was a low one, was passing, with the purpose of climbing onto the load for a ride, and that when the driver's back was turned the boy approached the side of the wagon, between the front and rear wheels, where he was knocked down and run over by the hind wheel. There are two witnesses who testify to this effect, one of whom states that the child, two and a half years old, and wearing a little short dress, tried to get on about the middle of the wagon; and the other says that he saw the child "run into the wagon in the middle," but could not see what it did. The driver corroborates this testimony, to some extent perhaps, stating that "the child, when picked up, was lying with his leg over against the track, his head toward the sidewalk."

Counsel for appellant urge that the verdict in favor of appellee is not sustained by the evidence. In support of this contention, it is claimed that it was a physical impossibility for the child, two years and a half old, to have been knocked down and rolled under the wagon, inasmuch as

the space between certain projecting bolts under the wagon and the pavement was not over five and a half inches. There is, however, evidence that, in addition to the loss of his leg, the boy was hurt all over his body, and that his face, head and shoulders were badly bruised. Injuries of this character, according to the evidence, are such as could have been caused by passing between the bottom of the wagon and the pavement. There is ample evidence to sustain the finding of the jury. It was the peculiar province of the latter to weigh the conflicting testimony and ascertain the facts. With the witnesses before them, the court and jury reached the conclusion that the driver was guilty of negligence. If they believed appellee's evidence, as they must have done, their verdict could not properly be otherwise. It is surely culpable negligence for the driver of a heavily loaded wagon passing along a city street not to use ordinary care to know where his horses are going, and what is happening in front of them.

Upon motion for a new trial, affidavits were presented, stating that two of the jurors admitted after the trial, that, during its progress, they examined a stone-wagon to ascertain whether the boy could have been rolled under such a wagon as appellee's testimony tended to show he had been. This was a controverted point. The wagon said to have been so examined was not that by which the injury was inflicted. It is claimed that by reason of such alleged misconduct of the jurors the verdict should have been set aside. The affidavits purport to show that the jurors expressed themselves after the verdict, as satisfied, from such examination, that there was ample room for the boy's body under the platform of such a wagon. These affidavits are not by the jurors themselves, but by the defendant and others. It is the settled law in this State that the affidavits of jurors can not be received for the purpose of showing cause for setting aside a verdict. Sanitary District v. Cullerton, 147 Ill. 385, and cases there cited. If affidavits of jurors themselves can not be so received, it is apparent that affidavits setting forth statements made by jurors after the close of a trial, must be equally inadmissible. If these

affidavits could be considered and were to be accepted as stating facts, the judgment of the two jurors in question would appear to have been influenced by incompetent evidence which could not have been admitted at the trial. The jury are required to rely on the evidence introduced in court and are not permitted to obtain it outside. But to permit the introduction of affidavits to impeach the conduct of jurors upon hearsay statements said to have been made by them, or even upon their own affidavits, after their connection with the case has terminated and they have been discharged, would open the door to endless attacks upon verdicts, invite fraud, and place litigants at the mercy of jurors dissatisfied, or open to corrupting influences.

It is insisted that the verdict of $5,500 is excessive, the result of undue sympathy for the child and a desire to punish appellant for an accident which was in no way his own fault, however culpable may have been the negligence of his employe, Jacobs the driver. If it be true that the verdict was in any sense an expression by the jury of passion or prejudice against appellant or the driver, such verdict ought not to stand. In this case the only evidence of such passion or prejudice is the amount. There is no fixed standard by which to measure the pecuniary damage which a child suffers by the loss of a leg. We might have been better satisfied with a smaller award, but no legal ground of objection is called to our attention, and the amount is not so large as to suggest improper motives in the jury.

The judgment of the Superior Court must be affirmed.