SAMUEL PHILLIPS *vs.* THE RHODE ISLAND COMPANY.

DECEMBER 23, 1910.

PRESENT: Dubois, C. J., Johnson, Parkhurst, and Sweetland, JJ.

(1)   *Jurors.   Affidavits of Jurors.*

The affidavit of a juror as to his own misconduct in taking an unauthorized view, is inadmissible to impeach the verdict.

On the ground of public policy, affidavits of jurors as to their own misconduct in or out of the jury room during a trial are inadmissible to impeach a verdict.

So also, an affidavit to the declaration of a juror impeaching a verdict not only contravenes the same rule but is also objectionable as hearsay evidence.

TRESPASS ON THE CASE for negligence.   Heard on exceptions of defendant, and overruled.

Johnson, J.  This is an action of the case, brought by Samuel Phillips against The Rhode Island Company, to recover damages for personal injuries alleged to have been sustained through the negligence of the defendant company in the operation of one of its street cars.

On April 21st, 1905, the plaintiff was driving a heavy wagon, loaded with oats, drawn by one horse, and was proceeding in an easterly direction from Promenade street across Canal street into Steeple street, in the city of Providence.  Canal street running north and south intersects Steeple street running east and west, and Promenade street runs into Canal street nearly opposite Steeple street.  The defendant company had a single track running through Steeple street into Canal street, which track, just before reaching the intersection with Canal street, curved in a southerly direction towards the corner of Steeple and Canal streets and extended across Canal street.  At the time in question the plaintiff's wagon, going in an easterly direction, had just crossed the tracks in Canal street—fifteen or twenty feet westerly from the crosswalk at the foot of Steeple street— in order to proceed easterly on the southerly side of Steeple street.  Near the crosswalk on Steeple street his wagon came in contact with a car of the defendant company which came down Steeple street towards Canal street, and the plaintiff was thrown to the ground and sustained the injuries complained of. The case was tried in the Superior Court with a jury on the 21st, 24th, and 25th days of January, 1910, and a verdict was rendered for the plaintiff in the sum of twenty-five hundred dollars.  Thereupon the defendant moved for a new trial, alleging as grounds therefor:

First:   That said verdict was contrary to the evidence and the weight thereof.

Second:   That said verdict was contrary to the law.

Third:   That the amount of damages awarded by said verdict is excessive.

Fourth:   That certain members of the jury before whom said cause was tried were guilty of misconduct in this, that during the progress of said trial, and without the consent of the court,

without the knowledge and consent of the attorneys for the defendant, did take an unauthorized view of the premises where the accident occurred, concerning which said action was brought and prosecuted.

Fifth:    That certain members of said jury during the progress of said trial did take an unauthorized view of the premises where the accident occurred, concerning which said action was brought and prosecuted, without the knowledge and consent of the defendant, and under such circumstances as to be calculated to lead a jury into error in the determination of said case.

Certain affidavits were filed by the defendant in support of said motion.    The defendant's motion for a new trial was denied by the justice who presided at the trial, and the case is now before this court on the defendant's bill of exceptions.

The exceptions pressed by the defendant are to the denial of its motion for a new trial upon the several grounds stated therein, the other exceptions stated in the bill being waived.

From an examination of the evidence, which was conflicting, we are not able to say that the jury was not justified in returning a verdict for the plaintiff, or that the damages are excessive.

Upon the question of unauthorized views alleged to have been taken by two of the jurors, the affidavit of one juror was introduced stating that in coming from the restaurant where he had been to dinner, he paced the distance from the restaurant to the corner of Canal street, and measured in his mind the distance from the south curbing on Steeple street to the car track and thought it was not enough for a car and team to pass.    An affidavit was also introduced stating that another juror had told the affiant that he, said juror, on Monday, January 24th, went alone to the place of the accident, to see how near his eye measurement would come to that stated in court; that he walked down Steeple street, on the south side of the street, and as he was walking along he thought in his own mind that the distance from Allen & Northup's restaurant to the corner of Canal street was about what was stated in court; that as he was walking towards the corner of Canal street he had a good view of the space from Steeple street south curbing to the car track,

and thought in his own mind that the distance was less than that stated in court; that he thought it would be a close squeeze for a car and team to pass each other when the car was on the curve; that he thought in his own mind that if the car was on the straight track on Steeple street that the team could have passed all right.    This juror, by his affidavit on file, denied making the statements attributed to him by said affiant, and stated that the only view he had of the place of the accident was when the jury took a view, January 21, 1910.

The defendant relies on the case of *Garside* v. *Ladd Watch Case Co.*, 17 R. I. 691, as decisive of this case.    In that case the plaintiff had been injured by falling into an opening in the landing of a stairway caused by a trap-door being left open.    There was much conflicting testimony as to the structure, size, and exact location of the trap-door in question, there being testimony that the entire landing was a trap-door and that there was another trap-door within the landing; and on the other hand, testimony that there was no trap-door within the landing, but that the landing itself was on hinges and constituted the only trap-door there.    After verdict for the plaintiff, the defendants petitioned for a new trial on the ground, *inter alia*, that certain members of the jury had during the trial taken an unauthorized view of the premises.    In support of this motion the defendant offered in evidence a number of affidavits, made by persons in the employ of the defendant, to the effect that on the last day of the trial, four or five of the jurors engaged in said trial visited the place where the accident happened, and examined the landing and trap-door in question.    The defendant also offered the affidavits of three of the jurors to the effect that the affiants and two other members of the jury visited the premises during the trial, of their own motion, and examined the trap-door in question.    The court granted a new trial, but did not decide the question of the admissibility of the affidavits of the jurors, saying, p. 696:  "But we need not decide in the present case whether the affidavits of the jurors, offered in evidence, as to what took place outside the jury-room are admissible, for there is sufficient proof of their misconduct without said affidavits."

There was no conflict of evidence in the case before us as to the distances referred to in the affidavit of the juror. The affidavit, if admissible, would not in our opinion be sufficient to justify a new trial. As, however, it was admitted by the court below, it becomes necessary to consider the question of its admissibility.

It is well settled in this State that the affidavits of jurymen as to what takes place in the juryroom are inadmissible to impeach their verdict. In *Tucker* v. *Town Council of South Kingstown,* 5 R. I. 558, 560, the court, speaking by Ames, C. J., said: "The affidavits of the jury-men as to what took place in the jury-room, or as to the grounds upon which they found their verdict, and which were read *de bene* at the hearing, must be rejected; a rule of policy, well settled both in England and in this country, excluding, for the security of verdicts, this mode of impeaching them."

The general rule that the affidavits of jurors as to their own misconduct during the trial are inadmissible to impeach their verdict is, we think, supported by the great weight of authority both in this country and in England. In *Owen* v. *Warburton,* 4 Bos. & Pull. 326, where the affidavit of a juryman, that the verditc was decided by lot, was offered, Mansfield, Ch. J. (pp. 329–330), said: "We have conversed with the other judges upon this subject, and we are all of the opinion that the affidavit of a juryman cannot be received. It is singular that almost the only evidence of which the case admits should be shut out; but, considering the arts which might be used if a contrary rule were to prevail, we think it necessary to exclude such evidence. If it were understood to be the law that a juryman might set aside a verdict by such evidence, it might sometimes happen that a juryman, being a friend to one of the parties, and not being able to bring over his companions to his opinion, might propose a decision by lot, with a view afterwards to set aside the verdict by his own affidavit, if the decision should be against him." In *State* v. *Freeman,* 5 Conn. 348, the court, by Hosmer, C. J. (p. 351), said: "In this state, it has been the practice to admit such testimony; but, said Ch. J. Swift (1 Dig. 775.),

' In England, and in the courts of the United States, jurors are not permitted to be witnesses respecting the misconduct of the jury; for it is a great misdemeanor; and this is most unquestionably the correct principle; for otherwise, a juror, who should be disposed to set aside a verdict, would give information to the party for that purpose; if not so disposed, he could suppress the information; and, in that way, any of the jury could command the verdict.'

"The question before us regards a point of *practice;* and as this cannot have any consequences antecedent to this case, it is competent for the court to decide, unshackled by precedent, and change the rule, if justice requires it."  .  .  .

"If the question depended merely on equitable grounds, as relative to the immediate parties to the suit, the testimony in question, perhaps, ought to be received.  But there are higher considerations to be resorted to.  On a principle of policy, to give stability to the verdicts of jurors, and preserve the purity of trials by jury, the evidence ought not to be admitted.  The reasons assigned by Sir James Mansfield, in *Owen* v. *Warburton* and by Ch. J. Swift, in his digest, are of great weight. The sanctioning of the testimony of one juror, relative to the misbehavior of the rest, would open a door to the exercise of the most pernicious arts, and hold before the friends of one of the parties, the most dangerous temptation.  By this capacity of penetrating into the secrets of the jury-room, an inquisition over the jury, inconsistent with sound policy, as to the manner of their conduct, and even as to the grounds and reasons of their opinions, might ultimately be established, to the injury and dishonour of this mode of trial; imperfect, undoubtedly, but the best that can be devised.  And under the guise of producing equity, there might be generated iniquity, in the conduct of the jurors, more to be deplored than the aberration from law, which, undoubtedly, sometimes takes place.

"The opinion of almost the whole legal world is adverse to the reception of the testimony in question; and, in my opinion, on invincible foundations."

In the cases cited *supra,* the affidavits of the jurors were

offered as to their misconduct in the juryroom. Where the affidavits of jurors have been offered as to their misconduct outside of the juryroom to impeach their verdict, the same rule of public policy has generally been applied by the courts. Thus in *Chadbourn* v. *Franklin*, 5 Gray, 312, where defendant moved for a new trial, and in support of the motion offered one of the jurors as a witness to show that on the Sunday intervening, while the trial was in progress, said juror went to the place where the collision occurred, and examined it for the purpose of informing himself upon the subject-matter of the trial, and the judge below ruled that the juror could not be permitted to testify, in support of this motion, to these acts tending to show his own misconduct, and the defendant excepted, the court, Shaw, C. J., said: "The modern practice has been uniform, not to entertain a motion to set aside a verdict on the ground of error, mistake, irregularity or misconduct of the jury, or of any of them, on the testimony of one or more jurors; and it rests, we think, on sound considerations of public policy." In *Rowe* v. *Canney*, 139 Mass. 41, 42, the court, by Morton, C. J., said: "The same considerations of public policy protect the communications of jurors with each other, whether in or out of the juryroom, during the pendency of the case on hearing before them." See also *Commonwealth* v. *White*, 147 Mass. 76, 80.

In *Sanitary District* v. *Cullerton*, 147 Ill. 385, the affidavits of three of the jurors were offered touching the conduct of others of the jury, and the bailiff in charge, tending to impeach the verdict. It was complained that after they had finished viewing the premises some of the jurors drank intoxicating liquor. The court, p. 390, said: "This court, in an unbroken line of decisions from the case of *Forrester* v. *Guard*, Breese, 44, is committed to the doctrine that the affidavits of jurors can not be received for the purpose of showing cause for setting aside the verdict. There may be *dicta* in some of the cases intimating a contrary rule, but in every case where the question has been before the court, and determined, the principle has been adhered to;" and again, p. 391: "In trials in the courts of justice not only should there be absolutely nothing improper

permitted, but, to the end that respect for the administration of the law may be maintained, the very appearance of evil should be avoided, and the courts are clothed with ample power to punish, appropriately, the misconduct of jurors, and of others in their presence, and no court ought to hesitate to impose adequate penalties and set aside verdicts where there has been conduct by which the jury may have been improperly influenced, or the verdict has been the result of improper conduct on the part of jurors. But to permit the affidavits of jurors to be heard, showing that the verdict to which they, on their oaths, consented, was the result of improper influence or corrupt practice, 'is condemned by the clearest principles of justice and public policy.' But few verdicts in important cases would be permitted to stand. Litigants, in whose favor verdicts might be rendered, would be placed at the mercy of corrupt jurors. Litigation would be increased, the widest door thrown open to fraud and perjury, and the administration of the law brought into contempt."

In *Heldmaier* v. *Rehor*, 90 Ill. App. 96, the court, at p. 98, said: " Upon motion for a new trial, affidavits were presented, stating that two of the jurors admitted after the trial, that, during its progress, they examined a stone-wagon to ascertain whether the boy could have been rolled under such a wagon as appellee's testimony tended to show he had been. This was a controverted point. The wagon said to have been so examined was not that by which the injury was inflicted. It is claimed that by reason of such alleged misconduct of the jurors the verdict should have been set aside. The affidavits purport to show that the jurors expressed themselves after the verdict, as satisfied, from such examination, that there was ample room for the boy's body under the platform of such a wagon. These affidavits are not by the jurors themselves, but by the defendant and others. It is settled law in this state that the affidavits of jurors can not be received for the purpose of showing cause for setting aside a verdict. *Sanitary District* v. *Cullerton*, 147 Ill. 385, and cases there cited. If affidavits of jurors themselves can not be so received, it is apparent that affidavits

setting forth statements made by jurors after the close of a trial, must be equally inadmissible.   If these affidavits could be considered and were to be accepted as stating facts, the judgment of the two jurors in question would appear to have been influenced by incompetent evidence which could not have been admitted at the trial.   The jury are required to rely on the evidence introduced in court and are not permitted to obtain it outside.   But to permit the introduction of affidavits to impeach the conduct of jurors upon hearsay statements said to have been made by them, or even upon their own affidavits, after their connection with the case has terminated and they have been discharged, would open the door to endless attacks upon verdicts, invite fraud, and place litigants at the mercy of jurors dissatisfied, or open to corrupting influences."

In *Clark* v. *Famous Shoe &c. Co.*, 16 Mo. App. 463, the court, p. 467, said: "We have also examined the defendant's complaint founded on the alleged misconduct of a juror.   That misconduct consisted, as the record shows, of the juror going to the building where the accident occurred, after the trial began, inspecting it and making some measurements, for the purpose, as he says, of verifying the correctness of the plats offered in evidence, and of seeing whether the place was dangerous.   The general rule undoubtedly is that the triers of the fact should derive their information from the evidence offered on the trial of the cause and the law as given to them by the court.   They are sworn to do so and are guilty of misconduct if they violate their oaths in that regard.   If the misconduct of the juror in this case would have been substantiated by anything beyond his own testimony, we would have felt at liberty to consider it, and determine whether it was such as to deprive the plaintiffs who were wholly innocent, of the benefit of their verdict.   But the only evidence found in the record of the alleged misconduct of the juror, is his own testimony given in court upon the hearing of the motion for new trial.   This testimony we are not at liberty to consider, nor should the trial court have considered it, because under the rule now prevailing in this state, the testimony of a juror tending to impeach his verdict, can not be

received, and it seems to make no difference in that regard, whether the alleged misconduct took place in or out of the jury-room."

In *Herring* v. *Wabash R. Co.*, 80 Mo. App. 562, the court, p. 568, said: "It is next insisted that the court erred in refusing to permit defendant to show by one of the jurors that during a recess in the trial he and another juror went to the place of the accident and viewed the scene to inform themselves upon the issues on trial. While, if true, such conduct on the part of the jurors was improper, there was no error in excluding proof thereof by the testimony of one of the jurors. The rule in this state is, that no juror will be permitted to impeach his verdict, either directly by his affidavit or evidence, or indirectly by the affidavits of others, as to statements made to them by the juror after the verdict was rendered."

In *Clum* v. *Smith*, 5 Hill, 560, where it was alleged that the foreman of the jury separated from his fellows after the case had been submitted and the jury had gone to their room, in order to learn from persons not of the jury the amount of damages which ought to be found in order to carry costs, obtained the information that fifty dollars was sufficient, which he communicated to the jury upon his return, whereupon a verdict for that amount was rendered for the plaintiff, the court said: "These facts are established by the affidavits of three jurors. The only other affidavit, that of the assistant clerk, comes short of making out any irregularity in the conduct of the foreman, unless we receive as evidence the declarations of the latter made subsequent to the time of the alleged transaction. This we cannot do. . . It therefore becomes unnecessary to inquire whether the misconduct imputed to the foreman forms a ground for setting the verdict aside; for it seems to be settled that jurors are not competent witnesses in support of such a motion as the present. That the affidavits of jurors are not receivable to impeach their verdict, was admitted on the argument; but it was said the rule meant impeachment for mistake or error in respect to the merits, not for irregularity or misconduct. It seems, however, to cover both grounds. The case of *Jackson* v. *Williamson*,

(2 T. R. 281,) is a strong one upon the question of mistake, while *Vaise* v. *Delaval*, (1 T. R. 11,) *Owen* v. *Warburton*, (4 Bos. & Pull. 326,) and *Dana* v. *Tucker*, (4 John. 487,) are all in point that jurors cannot be heard as to their own misconduct or that of their fellows." The court then quotes the remarks of Mansfield, Ch. J., in *Owen* v. *Warburton*, which we have quoted *supra*, and says: "Taking this to be the principle, it is equally applicable to all sorts of misconduct." See also *Williams* v. *Montgomery*, 60 N. Y. 648.

In *Deacon* v. *Shreve*, 22 N. J. L. 176, the court said, at page 182: "The principle is now well settled, that generally the affidavits of jurors shall not be received as to what took place in the jury-room, or elsewhere, to show misbehavior, or on the delivery of the verdict to show mistake, for the purpose of correcting or destroying the verdict, though it seems their affidavits are admissible for the purpose of exculpation. The rule stands on the ground of public policy, courts being unwilling to permit a dissatisfied juror by such means to destroy a verdict to which he had given a public assent."

In *Downer* v. *Baxter*, 30 Vt. 467, after the case had been given to the jury, the officer in charge allowed the jury to separate, and they went to their respective boarding-houses for dinner, returning thence to the juryroom and resuming the consideration of the case. The affidavits of all the jurors were read, stating that after they were impanelled to try the cause they had no conversation with any one touching it, except among themselves. The court, p. 475, said: "An objection was taken to the competency of the affidavits of the jurors and their admissibility raises a legal question which we are called upon to decide. We think the true rule is, that the affidavits of jurors may be read to exculpate themselves and sustain their verdict, but not to impeach it. It this case they were offered to show that the jurors had no conversation with others, nor heard any in relation to the cause."

In *Siemsen* v. *Oakland, etc., Electric R. Co.*, 134 Cal. 494, where an unauthorized view was alleged, the court said, p. 497: "However the rule may be in other states, it is settled in

this beyond controversy that a juror may impeach his own verdict upon no other ground than that designated by the code (citing cases). It is sought by respondent, upon this motion, to make a distinction between the misconduct of a juror before retiring, and the misconduct of a juror during retirement; but to this it may be said, in the language of *Boyce* v. *California Stage Co.*, 25 Cal. 463: ' In conclusion, upon this branch of the case we may add that a line of judicial decisions which struggles to multiply exceptions to a plain and simple rule, founded on considerations of the wisest policy, is not to be favored; on the contrary, the struggle should be to bring every case within the rule, lest the rule itself become shadowy, and in time wholly disappear in a multitude of exceptions.'" See also *Pickens* v. *Boom Co.*, 58 W. Va. 19; 29 Cyc. 982, 983 and cases cited; Thompson and Merriam on Juries, § 440 and cases cited.

In some States affidavits of jurors as to their own misconduct outside the juryroom during the trial are admitted to impeach their verdict. *Pierce* v. *Brennan*, 83 Minn. 422; *Peppercorn* v. *Black River Falls*, 89 Wis. 38; *Roller* v. *Bachman*, 5 Lea. 153. In Iowa it has been held that affidavits of jurors may be received, for the purpose of avoiding a verdict, to show any matter occurring during the trial, or in the juryroom, which does not essentially inhere in the verdict itself. *Wright* v. *I. & M. Tel. Co.*, 20 Iowa, 195. This was a case of misconduct in the juryroom. This rule has been followed in Kansas,— *Perry* v. *Bailey*, 12 Kan. 539. We are not, however, convinced by the reasoning of these cases. We are of the opinion that the affidavits of jurors as to their own misconduct in or out of the juryroom during the trial are inadmissible to impeach their verdict. The objection on the ground of public policy is just as strong in the one case as in the other. The affidavit of the juror in this case was inadmissible as to his own misconduct in taking an unauthorized view, to impeach the verdict, and therefore can not be considered. An affidavit to the declaration of a juror impeaching the verdict, besides contravening the same rule of policy, is condemned by the ordinary rule of evidence, excluding hearsay testimony.

.   The defendant's exceptions are overruled, and the case is remitted to the Superior Court with direction to enter judgment upon the verdict.

*Waterman, Curran & Hunt,* for plaintiff.

*Joseph C. Sweeney, Alonzo R. Williams,* for defendant.