Hammack *vs.* The State of Georgia.

---

ROBERT E. HAMMACK, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

JOHN HAMMACK, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

1. On a trial of an indictment for arson, it is not error to admit evidence showing that feelings of anger or dislike existed on the part of the defendant towards the owner of the property.

2. When several persons combine to burn the houses on a plantation, and they go to the place together, and one sets fire to the dwelling-house, another to the corn-crib, and another to the cotton-house, in execution of the common purpose, the act of each is the act of all, and either may be convicted for burning either of the houses burned.

3. When there are several written requests to charge the jury, and the same principle of law is involved in each, and the judge gives one of the requests in charge, it is not error to refuse the others.

4. When a judge was asked to charge the jury, that if they believed a witness to have done certain things, this was a ground to "distrust" the witness, and he gave the charge, except the word "distrust," for which he substituted "that the jury may consider in weighing;" or when the charge asked was, that if the jury believed the witness to have done certain other things, and testified under certain (stated) circumstances, this is *another* circumstance against believing him, and the judge gave the charge, inserting after the word circumstance, "that the jury may consider:"

*Held,* that this modification of the requests was not error.

5. When the judge was asked to charge, in relation to the evidence of an accomplice, that the corroborating evidence must be such as shows that he did not fabricate his story, and the judge inserted after "shows" the words, "to your minds," and gave the charge, and added, "but you alone are the judges as to what amount of corroboration in material matters is necessary on this subject," this was not error.

6. When it was an issue before a jury whether a witness, who was an accomplice, was corroborated by other evidence, and the judge charged the jury, that "if his (the accomplice's) statement about the prisoner, the witness and Elijah Hammack standing on the road together," concurs with the evidence of Haisten, who saw the three men in the road, it is proper for the jury to consider, under all the circumstances, whether Haisten's testimony corroborates Thomas' (the witness') statements in that respect, or whether Thomas (the accomplice) fixed up his story to correspond with the statements of Haisten, but refused to charge as requested, that "if the jury believed that he (Thomas) so framed his story as to make that one statement coincide with Haisten's statement, that such a coincidence should not be considered as satisfactorily confirming his evidence:"

*Held,* that there was no error in the refusal.

7. The evidence in these cases fully supports the verdicts.

Criminal law. Evidence. Charge of court. Witness. Accomplice. New trial. Before Judge KIDDOO. Quitman Superior Court. November Adjourned Term, 1873.

Hammack *vs.* The State of Georgia.

These two cases were argued and determined together.

Robert E. Hammack and John Hammack were placed on trial for the offense of arson, alleged to have been committed upon the property of Nancy Thomas, on November 15th, 1873. The former was charged with burning a corn-crib, and the latter a cotton-house. Both defendants pleaded not guilty. The evidence presented the following facts:

The defendants lived about one-half mile from the property burned. These houses were on the same lot, and in close proximity to the dwelling of Nancy Thomas. No one lived with her except her little grand-daughter. John Hammack married her grand-daughter, a sister of the child then with her. There had been a law-suit between her and the Hammacks, in which she was successful. This had produced bad feeling between them. On the night of the burning, the child of William B. Haisten, who resided about one-half mile distant, was up, saw the light produced by the fire, and awoke her father. He testified that he immediately aroused his four sons and a freedman, and all went as rapidly as possible to the place of Nancy Thomas to extinguish the flames; that shortly after arriving there, he saw three persons in the road, about one hundred yards distant, two of whom he recognized as defendants; that he did not recognize the third; that he called to them to come and put the fire out, but they did not respond; that he was then at work in extinguishing the flames, and when he looked up again they were gone; that he does not believe it possible for him to have been mistaken in the recognition of the defendants.

James Thomas testified, in brief, as follows: Was present when the torch was applied to the houses. The defendants, their father, and witness were on the ground. The defendant, John Hammack, set fire to the old lady's dairy; she kept a good many things in it; placed cotton there after she commenced picking; there was some in it when burned. The corn-crib was fired by the old man, Elijah Hammack. The defendant, Robert E. Hammack, fired Hardy Thomas' house;

this building was then vacant; it had been recently occupied as a dwelling-house by Hardy Thomas; it belonged to Nancy Thomas, and was distant about one hundred yards from her dwelling-house; it was not used as a crib, though it had some corn in it, belonging to Hardy Thomas, at the time of the fire. After putting the torch to the premises, they went to a point on the road about one hundred yards distant, and awaited developments. Heard Mr. Haisten call to them, as stated by him. Old man Elijah was over in the cotton patch, in the corner of the fence. The defendants and witness were standing in the road; after Haisten called to them, all went home. Nancy Thomas was the grand-mother of witness. The defendant, John Hammack, was his brother-in-law. The determination to burn the premises of Nancy Thomas had been arrived at by the parties therein engaged several days before the perpetration of the act. Witness was to receive $8 00 for his share in the transaction. The defendant, John Hammack, left when the news got out about the burning. The old man, Elijah, was brought to town under arrest; the defendant, Robert E. Hammack, and witness accompanied him as his witnesses; we agreed to testify that he was not at the burning, for which he was to pay us $8 00. Witness testifies in this case under a promise that he will not be prosecuted; he agreed to tell the truth.

W. T. Moore testified, in brief, as follows: Witness arrested the defendant, John Hammack, on Monday morning of the regular November term of the superior court, 1873, in a lane about two miles from Cuthbert; returned to old man Hammack's house with him; the last witness saw of him was when he went into a room to dress. He said he wanted to put on clean clothes before he went to town; his wife accompanied him; witness waited about fifteen minutes, and when the defendant failed to return, he went into the room after him, but he had departed; searched everywhere about the house, but could not find him; never met him again until witness saw him in jail, in Clayton county, Alabama. Was sent after him by the solicitor general.

The jury found the defendants guilty. They moved for a new trial upon the following grounds, to-wit:

1st. Because the court erred in admitting evidence as to the law suit between the defendants and Nancy Thomas, and the bad feeling thereby created.

2d. Because the court erred in refusing to charge as follows: " It is not a sufficient corroboration of the evidence of an accomplice to authorize conviction, that some part of his story is confirmed, unless he is corroborated in that part of his evidence which charges the crime on the accused."

3d. Because the court erred in refusing to charge as follows: "Before you should convict on his (the accomplice's) evidence, you should see to it that that part of his evidence which tends to fix guilt on the prisoner is satisfactorily corroborated by other evidence. The corroborating evidence should be such as satisfactorily shows that he did not fabricate his story." This request the court modified by inserting after the word "shows," " to your minds," and by adding, " you, alone, are the judges as to what amount of corroboration as to material matters is necessary on this subject."

4th. Because the court erred in refusing to charge as follows: " Such is the law as to the testimony of an accomplice, even where he testifies without any hope of relief or reward to himself, and is the discredit which the law casts on him as one who avows his own guilt of the same crime. If, in addition to his being an avowed accomplice, he also testifies under promises or hope of being relieved himself from prosecution or punishment, that fact is an additional ground to distrust his testimony." This request the court modified by substituting in place of the words "to distrust" the following, " that the jury may consider in weighing."

5th. Because the court erred in refusing to charge as follows: " If he admits on the stand that he had agreed and engaged, for a price, to swear to the prisoner's innocence, and came to town for that purpose, and that he was induced to swear against the prisoner by such hopes and promises of benefit to himself, and for no other reason, that, also, is an-

other circumstances against believing him." This request the court modified by inserting after the word " circumstance," the following, " that may be considered."

6th. Because the court erred in refusing to charge as follows : " If the jury believe that he, Thomas, so framed his story as to make that one statement (about seeing the three men standing in the road) fit to Haisten's statement, such a correspondence in their statements should not be considered as satisfactorily confirming his evidence."

To this ground the court attached a note, to the effect that he did charge as follows : " If his (Thomas') statement about the prisoner, the witness and Elijah Hammack, standing together in the road, concurs with the evidence of Haisten, who saw the three men in the road, it is proper for the jury to consider, under all the circumstances, whether Haisten's testimony corroborates Thomas' statement in that respect, or whether Thomas fixed up his story so as to correspond with that statement of Haisten."

7th. Because the verdicts were contrary to the law and the evidence.

The motions were overruled and the defendants excepted.

JOHN T. CLARKE ; H. & I. L. FIELDER ; J. H. GUERRY, for plaintiffs in error.

JAMES T. FLEWELLEN, solicitor general, by JOHN PEABODY ; A. HOOD, for the state.

McCAY, Judge.

1. In a case of this kind the feelings of the prisoner towards the owner of the property, and especially anything like threats that such owner would suffer a wrong, are certainly not only not irrelevant to the issue, but material evidence. If a crime is committed in secret, in any community, the mind of every man reverts to the enemies of the injured person ; and though such enmity is no evidence of crime, yet it may form one of the circumstances to be taken into account.

And in this view of the matter, it is not very material who is to blame for the anger. It may strengthen the presumption if the prisoner was in the wrong; but even if he have just cause for anger or dislike, then that is a circumstance worthy of consideration, especially in a case like the present.

2. The charge given by the judge on the subject of the nature of the corroboration, that it must consist of some circumstance going to connect the prisoner with the crime committed, comes fully up to the rule laid down by the majority of this court in the case of *Childers vs. The State,* 52 *Georgia,* 106, and is, indeed, more precisely in accord with it than is the request that he refused. A very just criticism might be made of the language used in the refused request. The words "in that part of the story which fixes the crime on the prisoner," might lead the jury to suppose that the proof of the other witnesses must be of some special fact testified to by the prisoner. But the true rule is, that the circumstances of corroboration must be such as themselves tend to fix the crime on the prisoner, though the accomplice may not have mentioned the fact at all. The charge given was as much on this subject as the prisoner was entitled to. The judge was not required to repeat it. If he distinctly and clearly gave the law upon the point, his duty was discharged. The repetition of it, in another shape, is only a waste of time and a confusion, instead of making the matter clearer. When is the judge to stop? Is he to repeat, over and over again, the same principle, in every shape in which ingenuity can throw the idea? We think not. The intent of the statute is to secure a substantial communication by the judge to the jury of such rules of law pertinent to the cause as the counsel of the accused may desire, and when that is done, not only is the law obeyed, but more, is a wrong both to the state and the accused.

3. Nor is there error in the other charges. We doubt if there is ever a case where one has a right to demand that the judge shall tell a jury that a certain thing, if proven, is a circumstance from which the jury should distrust a wit-

ness.   The judge put it more correctly when he said it was a matter the jury might consider in weighing the testimony. What weight it ought to have, was for the jury to determine. A judge should be very cautious in giving a jury rules by which to weigh evidence.   At best, they are rarely anything but general rules, subject to exceptions, and not to be applied with rigor; and we think the judge displayed a full appreciation of the circumstances of this case when he refused to point out circumstance after circumstance, as requested, and say, this is ground for distrust that ought to be considered against his credibility, etc.   They were all circumstances which the jury might consider in coming to their conclusion, and that was all. It was not a right in the prisoner to demand that the judge should heap up the circumstances, one after the other, and tell the jury that these circumstances were to be considered by them as tending to distrust and discredit the witness.   The circumstances were before the jury; they were there to be considered by them, and whether they should, from these circumstances, distrust his story, it was for them to say, and not for the judge to direct.

4. Nor was there error in the refusal to charge, under the circumstances, as requested, in reference to what the jury should do if they thought the circumstance mentioned by the accomplice, as to himself and the accused standing in the road, was fixed up to corroborate Haisten.   In the first place, we do not see any ground for such a charge.   Why should the jury think this.   Is there anything to indicate it?   And suppose the jury did think this particular fact was fixed up, but that the balance of his story was true?   Had this fact not been stated would not Haisten's testimony confirm and corroborate the statement of the witness?   If the witness had only stated that he and the Hammacks had set fire to the houses, would not Haisten's story, that he saw the Hammacks, as he says he saw them, be a circumstance of corroboration, tending to fix the crime on the accused, even though Thomas had not put the parties at the particular spot at the time? The rule, as laid down in *Childer's case*, is that the corrobo-

rating circumstances must be such as tend to fix the crime on the accused. And this they may do, though they be facts not testified to at all by the accomplice. Suppose a burglary, and an accomplice charges the crime on A, and some of the goods stolen are found on A, would not this corroborate the accomplice.

5. We think the evidence in these cases fully justifies the verdict. It is only a charitable man who would hesitate much to convict on Haisten's testimony, with the additional fact of ill-feeling by these persons against Mrs. Thomas. If Haisten was not mistaken, the *presence* of these men at that point, at that time of night, and their leaving as they did, is almost inexplicable, except upon the hypothesis of their guilt, and if to this be added the positive testimony of the accomplice—bad as he is—we can see very well how a jury of honest men might fairly conclude the defendants to be guilty.

Judgment affirmed.