E. R. Huffman v. The State.

*No, 3241. Decided November 6.*

1. **Practice—Bill of Exception** reserved to the admission of evidence, if it merely states the objection interposed, is not sufficient to establish the ground of objection. It must be made further to appear that the ground of objection actually existed. See this case in illustration.

2. **Same—Evidence—Contradicting Testimony.**—To contradict a witness by showing that he had made prior contradictory statements, it is usually requisite to ask him whether or not he made them, specifying the person to whom he made the same, and as far as possible the circumstances. The contradictory statements must be as to matters material and relevant to the issue, and it is only upon a denial, direct or qualified, by the witness, that he made such contradictory statements, that proof of them can be made.

3. **Same—Predicate—Witness.**—A defendant on the witness stand in his own behalf is subject to the same rules of examination as any other witness, is amenable to the same tests, and may be examined, cross-examined, impeached, and contradicted in like manner. While on the stand in his own behalf the defendant was asked about material statements made by him on his preliminary examination. He qualifiedly denied that he made them—that is, he declared that he had no recollection of having made them. Thereupon the State, over the objection that the predicate was insufficient, was permitted to introduce in evidence the written statement of the defendant upon his preliminary trial. *Held*, that the predicate was sufficient, and the objection was properly overruled.

4. **Theft—Evidence.**—The prosecution was for the theft of a mare, and the proof showed that the mare was in the H O F brand when recovered by her owner. Over the objection of the defendant the State was permitted to prove by one Milligan that when he traded with defendant for the mare in question, in the presence of one Morris, the defendant and Morris told him that they were jointly interested in the H O F brand. *Held*, that the proof was competent, and was properly admitted.

5. **Same—Possession—Charge of the Court.**—An animal in its accustomed range is in the possession of its owner, and if fraudulently taken from its accustomed range it is taken from the possession of its owner. A charge to such effect, based upon supporting evidence, was correct.

6. **Same.**—The defendant based his claim of right to take the alleged stolen animal upon a power of attorney purporting to have been executed by one Coker. The proof tends strongly to show that the said power of attorney was an instrument fabricated by the defendant and Morris under the fictitious name of Coker. The court instructed the jury, in substance, that if defendant took the animal in good faith, believing her to be the property of Coker, he should be acquitted; but that if, on the other hand, he did not believe her to be the property of Coker, and he took the animal without the consent of the owner, and with the fraudulent intent to deprive the owner, etc., he should be convicted, notwithstanding the power of attorney. *Held*, correct.

7. **Same—Circumstantial Evidence.**—It is only in cases depending solely upon circumstantial evidence that the court is required to instruct the jury upon that character of proof.

8. **Practice—Verdict** was received by the court on Sunday, the defendant being present in person, but his attorney absent. *Held*, correct.

9. **Theft—Fact Case.**—See the statement of the case for the substance of evidence *held* sufficient to support a conviction for theft.

APPEAL from the District Court of Wise. Tried below before Hon. J. W. Patterson.

The conviction in this case was for the theft of a mare, the property of J. L. Voiles. The penalty assessed by the verdict was a term of five years in the penitentiary.

Succinctly stated, the proof for the State establishes the ownership of the animal as alleged in the indictment, and shows that she was taken from her accustomed range about the time alleged. When taken she was branded S A. When recovered by Voiles she was in the H O F brand, with the S A brand "barred out." Several witnesses testified to inquiries made by the defendant regarding the said animal prior to the alleged theft, and one Milligan testified that subsequent to the date of the alleged theft he traded with the defendant for the animal, one Enoch Morris being present. The H O F brand was then on the mare, and on

that occasion both defendant and Morris told the witness that Morris was jointly interested with defendant in the ownership of the H O F brand. It was also shown by the State that defendant penned the animal, barred out the S A brand, and put her in the H O F brand, Enoch Morris being present.

The defense admitted the taking of the animal from the range by the defendant, and based his right to do so upon a power of attorney, purporting to have been executed by one E. Coker, authorizing him to take up, among others, a certain mare corresponding in every particular with the alleged stolen animal.

The power of attorney above referred to was drafted and attested by the Hon. Henry M. Furman, in Fort Worth, Texas, who testified as a witness on this trial. He stated that he drafted the instrument at the instance of the defendant, who introduced a man to him as E. Coker. Coker signed the instrument, and at the request of both parties the witness attested it as a subscribing witness. Witness had never previously seen Coker, and so far as he knew had never seen him since.

On the stand in his own behalf the defendant admitted that he took up the animals; claimed that he did so under Coker's power of attorney, the *bona fides* of which, so far as he was concerned, he earnestly protested. He stated, in substance, that on May 21, 1886 (the date of the power of attorney), he met Coker in the city of Fort Worth, having previously formed his acquaintance in Denton County. Coker told him that he had three horses in Wise County, one of them being the mare in question, which he wanted the witness to take up for him, for which trouble he would pay witness five dollars for each animal recovered. The witness demanded and Coker agreed to execute written authority for witness to take up the said three animals. The power of attorney was then drawn up by Hon. Henry M. Furman, signed by Coker, and attested by Furman. On his return to Wise County the witness made inquiries for the horses, and after some search found the mare in question and a bay horse included in the power of attorney. Those two animals he placed in Riley Clements's pasture, and wrote to Coker at De Gress, Jack County, the address given him by Coker. He received no written reply from Coker, but within fifteen days Coker came in person to witness's house, and witness took him to Clements's pasture and showed him the two animals. He claimed them both, and on the spot sold the mare to witness, and rode the bay horse off, since which time the witness had never seen him. Believing his power of attorney to be sufficient title, the witness took no bill of sale from Coker. Witness afterwards publicly branded the mare in his brand (H O F) in Clements's pen, Clements and other parties being present. About two months later he traded the animal to Milligan, Morris being present. Witness and Coker caught the animals in the northeast corner of Clements's pasture. Morris was in Fort Worth

when the power of attorney was executed, but did not go with the witness and Coker to Furman's office.

On his cross-examination the witness, in reply to questions by the prosecution, stated that he did not remember, but did not think that he did, on his examining trial, testify that he first met Coker in Fort Worth.

He did not remember, but did not think he did, on his examining trial, testify that E. Morris was with him when he got the power of attorney.

He did not remember, but did not think he testified on his examining trial that he and Coker found the two horses in Renshaw's pasture.

He did not remember, but did not think he testified on his examining trial that the first thing Coker said when he reached his, witness's, house after witness had written to him, was, "You have got my horses, have you?"

The State, in rebuttal, read the following extracts from the defendant's written testimony on his examining trial:

"When Coker came he and me found the mares in Renshaw's pasture."

"Mr. Enoch Morris was with me when I got the power of attorney to the mare."

"I got acquainted with E. Coker first in Fort Worth, I think in March, 1886."

"When Mr. Coker came over about the first thing he said was, 'You got my horses, did you?'"

*Graham & Holman*, for appellant.

*W. L. Davidson*, Assistant Attorney-General, for the State.

Willson, Judge.—We are unable to say, from the record, that any error was committed in admitting as evidence the extracts from the written testimony of defendant taken on his preliminary examination before a magistrate. It is not made to appear by the bill of exception or otherwise that said testimony was not taken and authenticated in accordance with law. True, the bill of exception states that an objection made to said testimony was that said extracts were not authenticated, but the mere statement in a bill of exception of an objection made to evidence does not establish that the ground of objection existed. It must be made to appear that the ground of objection in fact existed. Hennessy v. The State, 23 Texas Ct. App., 340.

Another objection made to this testimony was that a proper predicate was not laid for its introduction. This objection is not supported by the record. Defendant testified as a witness in his own behalf on the trial. His testimony was subject to the same tests as that of other witnesses. He was subject to be examined, cross-examined, and impeached in precisely the same mode as other witnesses. Whart. Crim. Ev., sec. 430.

"He may be contradicted by proof of prior inconsistent statements, and this without previously questioning him as to such statements." Id., sec. 433.    See also Chambers v. The People, 105 Ill., 409; Gibbs v. Lindbury, 22 Mich., 479.    It is usually requisite, however, to ask the witness whether he has not made such prior contradictory statement, specifying the person to whom the same was made and as far as possible the circumstances.    And it is only upon a denial, direct or qualified, by the witness that he made such contradictory statements that proof of them can be made, and the contradictory statements must be as to matters material and relevant to the issue, and not as to mere collateral matters. Whart. Crim. Ev., sec. 483; Willson's Crim. Stats., sec. 2513.    In this case the defendant was asked about statements made by him on his preliminary examination before a magistrate; the statements were material and relevant to the issue; he qualifiedly denied having made such statements—that is, he said he did not remember making them, and did not think he had made them.    We think a sufficient predicate was laid for the admission of the statements, and the court properly instructed the jury that said statements were not to be considered for any other purpose than as affecting the credibility of defendant as a witness in his own behalf.

It was not error to admit the testimony of the witness Milligan as to the joint ownership of defendant and one Morris of the mare in question.    It was in proof that the mare was in the H O F brand, and Milligan's testimony was that the defendant and Morris stated to him that they were jointly interested in that brand.    There is other evidence in the case which tends strongly to show that Morris acted with defendant in the theft of the mare, and it is the theory of the prosecution that the theft was their joint act.

Several objections are urged by counsel for defendant to the charge of the court, none of which are in our opinion maintainable.    It was proved that at the time the mare was taken by defendant she was running in the range in Wise County, where she had been accustomed to run for some time prior to the taking.    She was therefore taken from her accustomed range, and was at the time of taking in the possession of her owner, and upon this issue the charge is correct.

We see no error in the charge as to defendant's claim of right to take the mare.    He claimed the right to take her under a power of attorney purporting to be executed by one E. Coker.    The evidence tended strongly to show that said power of attorney was a sham or device concocted by defendant and Morris with a view to covering up the fraudulent taking, and that Morris, under the fictitious name of Coker, executed said power of attorney.    Such being the evidence the charge of the court was applicable to the facts and correct in principle.    Roberts v. The State, 17

Texas Ct. App., 82; Prator v. The State, 15 Texas Ct. App., 363; Shoe-fercater v. The State, 5 Texas Ct. App., 207.

The charge is not defective in failing to instruct as to the character of defendant's possession of the mare, whether recent or remote. This issue was not in the case, because the defendant himself testified that he took the mare from the range in Wise County. Nor was it essential to charge as to circumstantial evidence, in view of defendant's admission that he took the mare. Having given fully and correctly the law applicable to the facts proved, it was not error to refuse the several special instructions requested by defendant.

It was not error to receive the verdict on Sunday, and in the absence of defendant's counsel, the defendant himself being present. Willson's Crim. Stats., sec. 2399.

A new trial was properly refused. There is sufficient evidence to warrant the conviction. It was the conclusion of the jury that the power of attorney relied upon by defendant was a mere sham, fabricated by himself and Morris to shield them in the commission of the theft, and this conclusion was, we think, justified by the evidence. As to the alleged newly discovered evidence, it is not made to appear that it could not have been by the use of reasonable diligence found and produced on the trial.

The judgment is affirmed.

*Affirmed.*

Hurt, J., absent.