## CHICAGO, R. I. & P. RY. CO. v. BROWN.

No. 5864.     Opinion Filed February 1, 1916.

(154 Pac. 1161.)

1. **TRIAL—Issues for Jury—Conflicting Evidence.** Where there is evidence reasonably tending to sustain an issue on the part of plaintiff, and the evidence of defendant conflicts therewith, a determination thereof is for the jury.

2. **APPEAL AND ERROR—Verdict—Conflicting Evidence.** A verdict found upon evidence reasonably tending to support it, though in direct conflict with all other evidence in the case, will not be disturbed by this court.

3. **NEW TRIAL—Impeachment of Verdict—Testimony of Juror.** Upon grounds of public policy, jurors will not be heard by deposition, affidavit, or other sworn statement to impeach their verdict.

4. **SAME—Incompetency of Juror—Hearsay.** Statements made by a juror after the trial of a case to or in the presence of defendant's attorney, tending to show that such juror was an incompetent juror, cannot be shown by the testimony of such attorney.

(Syllabus by Collier, C.)

*Error from District Court, Seminole County;*
*Tom D. McKeown, Judge.*

Action by Minnie Brown against the Chicago, Rock Island & Pacific Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*C. O. Blake, R. J. Roberts, W. H. Moore, J. G. Gamble,* and *George C. Crump,* for plaintiff in error.

*T. G. Cutlip* and *W. N. Maben,* for defendant in error.

Opinion by COLLIER, C. This suit was begun by Minnie Brown, defendant in error, hereinafter called plaintiff, against the Chicago, Rock Island & Pacific Railway Company, plaintiff in error, hereinafter called defendant, in the district court of Seminole county, to recover the sum of $15,000 damages alleged to have been

sustained by her through the negligence of defendant while she was a passenger on one of its trains en route from Stewart, Okla., to Asher, Okla., on the 1st day of April, 1912.

On the trial of the case plaintiff testified substantially as follows: That she lived at Asher, Okla.; that she was married; that her husband was living; that she had two children; that she made a trip to visit her brother in March, 1912; that she stayed between two and three weeks; that she was pregnant at the time; that her general health was good; that the night before she started home she stayed with her brother, Walter Bryson; that they started from her brother's house about half past 3 o'clock in the morning; that her brother, W. B. Bryson, accompanied her; that she had no injury or accident on the road; that they reached Stewart about half an hour before the train left; that, when they reached Stewart, she went to the depot, and, when the train came, she got on the train; that her brother assisted her with the children and luggage; that she sat four or five feet, as nearly as she could remember, from the end of the coach; that there were two seats turned, facing each other; that she was sitting on one of the seats, and her children in front on the other; that she was facing the direction the engine was going; that the train jerked, and there was a sudden jar that threw her out of the seat; that she hit something on the left side; that she did not know whether it was a pipe or not; that she tried to get back on the seat, but never did get back; that she had a miscarriage on the train a few minutes after she was hurt; that she did not get any medical attention until the train reached Shawnee, and that they forced her to a hospital, against her will; that she suffered terribly—

almost death; that it lasted a long time, and she had not gotten over it yet; that her health is ruined now and forever; that after she left the hospital she took the train to Asher; that Dr. Reeder treated her at Asher; that she is under his treatment at this time; that she had no notice of the fact that the cars were going to be suddenly jerked; that she had never had a miscarriage previous to this one in her life; and that she was 25 years of age when this occurred.

Upon conclusion of the evidence of plaintiff defendant demurred thereto, which demurrer was overruled by the court and exceptions saved. Thereupon defendant introduced evidence of members of its train crew and several passengers which was in direct conflict with the evidence of plaintiff as to the sudden jerk or jar of the train, or that plaintiff had been thrown from her seat.

The case was tried to a jury and resulted in a verdict for plaintiff for $2,000, to which the defendant duly excepted. A timely motion for a new trial was filed by defendant, which motion was overruled and excepted to. In said motion, defendant, as ground for a new trial, alleged misconduct on the part of one of the jurors in the jury room; and, against the objection and exception of the plaintiff, the court admitted the testimony of two of the jurors in this case showing that one of the jurors who signed the verdict rendered had stated in the jury room, in the presence of the jury, that he would not believe any employee of the railroad in the case, and, as a basis for such statement, related his experience with the testimony of railroad employees in a case arising out of the death of his brother, in which case said witnesses admitted to him (juror) that they had falsely sworn in order to hold their jobs.

Defendant on a hearing of said motion also introduced evidence tending to show that the said juror who made said statements in the jury room was examined on his *voir dire* before being accepted as a juror, and stated that he had no prejudice against the defendant; that he had had a brother killed by a railroad, but the matter had been settled. Against the objection and exception of plaintiff, evidence of one of the attorneys of defendant that said juror, after trial, stated to him the substance of what the said two jurors testified had been said in the jury room by said juror, was admitted on a hearing of said motion for new trial.

The court overruled the motion for new trial, and judgment was entered upon the verdict, to which the defendant duly excepted. To reverse said judgment, this appeal is prosecuted.

There are but two errors assigned, which are as follows:

"(1) The court abused its discretion in refusing to grant a new trial on the ground that the verdict was against the weight of the evidence and was not supported by sufficient evidence; (2) the court erred in refusing a new trial on account of the misconduct of W. D. Berry, one of the members of the jury, by reason of which misconduct the defendant was prevented from having a fair trial."

On page 57 of defendant's brief it is said:

"The appeal in this case does not seek primarily to impeach the verdict, but raises the question whether the defendant, without fault on its part, was deprived of a trial before an impartial jury."

Consequently the second assignment of error is the only one insisted upon. If, however, we are mistaken as

to the said first error assigned being waived, the same is nevertheless not well taken. While the evidence is in direct conflict, yet there is evidence upon which to predicate the verdict. In the case of *Chicago, R. I. & Pac. Ry. Co. v. Crider,* 52 Okla. 487, 153 Pac. 63, it is held:

"(1) Where in an action at law there is conflict in the evidence, and the verdict in favor of the plaintiff is approved by the trial court, this court cannot weigh the evidence and reverse the judgment because the evidence on which the verdict was founded was contradicted by other evidence at the trial.

"(2) This court has jurisdiction to review a judgment where the verdict on which it is founded is not reasonably supported by the evidence, but by this is meant that, assuming the evidence to be true, it does not reasonably prove the fact, and not that where the evidence is conflicting this court can weigh it, in an action at law."

We are of the opinion that the sole contention in this case is based upon the second assignment of error, based on the misconduct of W. D. Berry, who was a member of the jury.

In *St. Louis & S. F. R. Co. v. Brown,* 45 Okla. 143, 144 Pac. 1075, it is said:

"This court has held several times, without any apparent qualification, that affidavits or testimony of jurors will not be received for the purpose of impeaching their verdict. *Colcord v. Conger,* 10 Okla. 458, 62 Pac. 276; *Barnes v. Territory,* 19 Okla. 373, 91 Pac. 848; *Pitchlynn v. Cherry,* 32 Okla. 77, 121 Pac. 196; *Tulsa St. Ry. Co. v. Jacobson,* 40 Okla. 118, 136 Pac. 410; *Glockner v. Jacobs,* 40 Okla. 641, 140 Pac. 142."

In the case of *Spencer v. State,* 5 Okla. Cr. 7, 113 Pac. 224, it is said:

"Jurors cannot be heard to impeach their verdict unless expressly authorized to do so by statute, and then only in the manner provided by statute. When jurors are impaneled, they are sworn to decide the case submitted to them according to the law and the evidence. For a juror to make an affidavit that he has violated his oath and rendered a verdict upon any other ground than the sworn evidence in a case places him in contempt of court."

In *Tulsa St. Ry. Co. v. Jacobson, supra,* Mr. Chief Justice Hayes quotes with approval from *Colcord v. Conger, supra,* the rule governing this question, as follows:

" 'Upon grounds of public policy jurors will not be heard by affidavit, deposition, or other sworn statement to impeach or explain their verdict, or show on what ground it was rendered, or that they made a mistake, or misunderstood the law or the result of their finding, or to show what items entered into the verdict or how they arrived at the amount. Jurors will only be heard in support of their verdict or conduct when same is attempted to be impeached.' This doctrine is supported by the decided weight of authority (2 Thompson, Trials, 2618), and no good reason has been suggested to us why it should be overturned."

In the case of *Keith v. State,* 7 Okla. Cr. 156, 123 Pac. 172, Furman, P. J., quotes with approval from *Spencer v. State, supra,* the following:

"If, after being discharged and mingling with the public, jurors are permitted to impeach verdicts which they have rendered, judgments based upon verdicts of juries would rest upon a very uncertain foundation. Litigants against whom verdicts have been rendered would be continually importuning jurors, and attempting to obtain from them affidavits upon which such verdicts could be assailed. This would result in perjury and brib-

ery. There would be no end of litigation in cases tried before juries. Therefore, for the security of litigants, and to prevent fraud and perjury, as well as for the protection of the jurors themselves, courts will not allow jurors to impeach their own verdict, unless they are permitted to do so by the express provisions of the statute. We have no statute permitting this to be done."

In *Barker v. Livingston Co. Nat. Bank*, 30 Ill. **App.** 591, it is said:

"It is further objected that the court erred in not granting a new trial on the ground of the prejudice of the juror Bennett. This claim is based on a declaration alleged to have been made by Bennett after the verdict that he did not believe what Kent swore to on the trial, because he knew him too well. Conceding that the juror made this declaration (but which he denies), still it cannot be received to impeach his verdict. It is well settled that a juror cannot impeach his own verdict by declarations made after the trial which would show his disqualification as a juror, or to show misconduct on the trial. *Allison v. People*, 45 Ill. 37; *Niccols v. Foster*, 89 Ill. 386. The affidavit was properly rejected by the court."

In *Allison v. People*, 45 Ill. 37, it is said:

"It is, however, urged that in this case there are affidavits of persons not jurymen in the case, and that they of themselves were sufficient to require the granting of a new trial. When examined, it seems that the facts sworn to in those affidavits were derived from the jurymen. We therefore perceive no difference in the effect whether the facts are sworn to by the jurymen or by persons learning them from the jurymen. To receive and act upon these affidavits would be to do indirectly what the law does not permit to be done directly. Such a course cannot be adopted. Whilst it may be true that the jury may have been guilty of misconduct, still it is not established by evidence upon which the court was

authorized to act. This is the uniform current of authority, so far as we have been able to find, and no reason is perceived for holding differently."

In Thompson and Merriam on Juries, sec. 445, it is stated:

"If the courts refuse, on grounds of public policy, to listen to primary evidence of a fact, they will, of course, for stronger reasons, refuse to listen to secondary evidence of it. What the law will not allow to be proved by the oath of the person having the knowledge it obviously will not allow to be proved by the oath of another person deriving his information from the unsworn statements of the former person. It follows that the affidavits of counsel, or other persons, of the misconduct of the jury, upon information derived from particular jurors, will not be heard to impeach the verdict. If the same grounds of public policy did not intervene as in the case where the fact is sought to be proved by the oath of the juror himself, a consideration of the infirmity which attaches to hearsay testimony would operate to exclude it."

It is our opinion that the court erred in admitting the evidence of the two jurors who did not sign the verdict to impeach the verdict rendered, and that the court also erred in admitting evidence of the statements made by the juror Berry after the trial, in the presence of one of defendant's attorneys, by reason of the infirmity which attaches to hearsay testimony. But, as the court overruled the motion for new trial, such errors were harmless.

We are of the opinion that the court did not err in overruling the motion for a new trial.

Finding no prejudicial error in the record, this case should be affirmed.

By the Court: It is so ordered.