STATE, Respondent, v. LONNIE BOYKIN, Appellant.

[234 Pac. 157.]

MURDER—SUFFICIENCY OF INFORMATION—DENIAL OF COUNSEL—REFUSAL OF WITNESS TO CONVERSE WITH ADVERSE COUNSEL — CONTRADICTORY STATEMENTS OF ACCUSED — EFFECTS OF AS EVIDENCE — INSTRUCTION—NEW TRIAL—IMPEACHMENT OF VERDICT BY JUROR.

1. An information charging the crime of murder in the language of the statute is sufficient.

2. Under the facts in this case it was not prejudicial error for the court to refuse to instruct in the language of sec. 8720, C. S.

3. The court did not commit error in refusing to instruct the jury that it might take into consideration in weighing the evidence the refusal of a state's witness to talk with defendant's counsel.

---

Publisher's Note.

1. Form and sufficiency of indictment or information, see notes in 94 Am. Dec. 253; 3 Am. St. 279.

4. Where the court refused to instruct the jury generally that it could consider contradictory statements of witnesses only for the purpose of impeachment, and it appeared that the accused who had been sworn and testified had also made contradictory statements, *held*, such refusal was not error, accused's statements being admissible as proof of guilt.

5. Where on a motion for new trial on a conviction of manslaughter the court refused to entertain the depositions or oral testimony of jurors as to misconduct in the jury-room not involving the determination by chance, *held*, no error.

APPEAL from the District Court of the Fifth Judicial District, for Bannock County. Hon. O. R. Baum, Judge.

Defendant was convicted of the crime of voluntary manslaughter; he appealed from the judgment and order denying motion for new trial. *Affirmed.*

Anderson & Jeffery, for Appellants.

The court should not have overruled the demurrer to the information and the objection should have been sustained to the introduction of evidence, as the information does not allege facts sufficient to constitute the crime of murder. (21 Cyc. 841; *State v. Smith,* 25 Ida. 541, 138 Pac. 1107; *People v. Weaver,* 47 Cal. 106.)

Requested instruction No. 2 of defendants should have been given. (16 C. J. 821; C. S. 8720.)

Requested instruction No. 6 should have been given. (*State v. Trego,* 25 Ida. 625, 643, 138 Pac. 1124, 1130; 40 Cyc. 2687.)

The court should not have permitted the witnesses Palmer and Boykin to answer the impeaching questions found in the record. (C. S. 8039; *Hilbert v. Spokane etc. R. R. Co.,* 20 Ida. 54, 116 Pac. 1116.)

The court may assume the existence of facts which are admitted by the parties, especially by the accused, or which are agreed upon by counsel, or which are established clearly and conclusively by the evidence beyond a reasonable doubt.

We admitted that there were contradictory statements in the record by asking for the giving of requested instruction

No. 8. (Sec. 18, Branson, Inst. to Juries, Flex. ed.; 14 R. C. L. 738; 16 C. J. 850; *Jones v. State* (Tex. Cr.), 154 S. W. 1018; *Wilson v. State,* 37 Tex. Cr. 373, 39 S. W. 373; *People v. Davenport,* 13 Cal. App. 632, 110 Pac. 318; *Culpepper v. State,* 4 Okl. Cr. 103, 140 Am. St. 668, 111 Pac. 679, 31 L. R. A., N. S., 1166; *Owens v. Jenkins,* 25 Ky. App. 1567, 78 S. W. 212; 75 Ky. Law Rep. 1567; 40 Cyc. 2764.)

A. H. Conner, Attorney General, and James L. Boone, Assistant, for Respondent.

An information which states the crime in the words of the statute is sufficient. The information in this case is sufficient. (*State v. Lundhigh,* 30 Ida. 365, 164 Pac. 690.)

It is not error to refuse an instruction which simply quotes the provisions of sec. 8720, C. S. (*State v. Turner,* 29 S. C. 34, 13 Am. St. 706.)

It is not error to refuse an instruction which in effect states that a witness can be impeached by his refusal before trial to talk with counsel for appellant or counsel for the state.

C. S., secs. 8038, 8039, prescribe the character of evidence and the method to be followed in impeaching a witness. The methods prescribed are exclusive and the statute must be conformed to. (*State v. Farmer,* 34 Ida. 370, 201 Pac. 33; *State v. Black,* 36 Ida. 27, 208 Pac. 851.)

It is not error to refuse to give an instruction which invades the province of the jury and is so worded as to point out to the jury what inferences they might or could draw from such facts. (*State v. Jones,* 28 Ida. 428, 154 Pac. 378; *State v. Marren,* 17 Ida. 766, 107 Pac. 993.)

Where a requested instruction is erroneous either wholly or in part it may properly be refused. (16 C. J. 1066, p. 2507, note 89.)

The court did not err in denying the motion for a new trial, nor in denying the defendant the right to introduce oral evidence at the hearing of the motion for new trial, nor in denying the motion of the defendant to take depositions

to be used upon a rehearing upon the motion for a new trial. (*State v. Abbott,* 38 Ida. 61, 213 Pac. 1024, 224 Pac. 791.)

T. BAILEY LEE, Commissioner. — Lonnie Boykin and Lottie Glenn, accused of murdering one Sarah Abrams, were convicted of voluntary manslaughter in the district court of Bannock county and duly appealed from both the judgment and order denying their motion for new trial. Lottie Glenn having died in the meantime, the record is to be considered only with respect to the appeal of Lonnie Boykin.

The information charged: "That the said Lonnie Boykin and Lottie Glenn on or about the 8th day of November, 1923, . . . . in the County of Bannock, State of Idaho, did then and there wilfully, unlawfully, feloniously, deliberately, premeditatedly, and with malice aforethought, kill and murder one Sarah Abrams, . . . . "

A general demurrer having been overruled, the trial proceeded upon the plea of not guilty. Defendant objected to the introduction of any evidence upon the part of the state, which objection was overruled. The rulings have been assigned as error, the defendant insisting that the information was insufficient for failure to set forth the manner and means of the alleged killing. Such an information was recently upheld by this court in *State v. Lundhigh,* 30 Ida. 365, 164 Pac. 690, where *State v. Smith,* 25 Ida. 541, 138 Pac. 1107, relied upon by defendant was expressly overruled, the court declaring that an information charging murder in the language of the statute is sufficient.

It appears from the evidence that when first arrested the defendant, Boykin, was locked up and denied the right to converse with counsel; in consequence whereof his attorney requested the court to instruct the jury in terms of C. S., sec. 8720, directing that one arrested be taken before a magistrate without unnecessary delay and be permitted to receive the visits of an attorney. This evidence was admissible and this instruction would have been proper, only as bearing upon the credibility of the officer so detaining the defendant if such officer were a witness. The testimony discloses that

the officer did not testify to anything which was contradicted by the defense or which bore directly upon the guilt of the defendant; therefore it was not prejudicial error to refuse the instruction.

It seems that the state's witness, Boyce, when approached by defendant's counsel, refused to talk; and defendant sought an instruction advising the jury that they might take into consideration such refusal in weighing the evidence. The request was refused and defendant claims error, citing the language of *State v. Trego,* 25 Ida. 625, at 643, 138 Pac. 1124, where the court said:

"The state is not interested in convicting any person charged with a crime unless he is really guilty, and it seems to me that no candid witness would hesitate to state what he or she knew about an alleged crime either to counsel for the state or to counsel for the defendant, so that the defendant might have the opportunity to procure proper evidence to explain any suspicious circumstances or other facts tending to show the defendant guilty, if it were possible for him to do so."

This was merely *dictum* and fell far short of declaring a hesitant witness to be presumably biased or obligated to unbosom himself to the adverse party. Such an instruction would have in effect authorized a method of impeachment unknown to the statute, and was properly refused. The court also refused the following instruction requested by the defendant:

"The court instructs you, gentlemen of the jury, that certain evidence has been admitted of alleged contradictory statements made by certain witnesses of both the prosecution and the defense, and you are instructed that such impeaching evidence may be considered by you only for the purpose of lessening or mitigating the weight to be given the evidence of the witnesses thus attempted to be impeached, and must not be considered by you as proving or tending to prove any fact."

The defendant had testified in his own behalf. Inasmuch as he too had made conflicting statements, it will be observed

that the requested instruction would have applied to his testimony as well as to that of other witnesses; and, while such instruction, had it been restricted to other witnesses, would have been eminently proper, it would have been a direct misstatement of the law when applied to the defendant. It is well settled that any false statement made by an accused for the evident purpose of avoiding suspicion is admissible as a proof of guilt. (*People v. Cuff*, 122 Cal. 589, 55 Pac. 407; *Crawford v. State*, 112 Ala. 1, 21 So. 214; *Huffman v. State*, 28 Tex. App. 174, 12 S. W. 588.) Here the defendant denied his presence at the shooting, a statement the falsity of which was proven by the state, and later admitted by the defendant while on the stand. Where a proffered instruction contains incorrect coupled with correct statements of the law, it is not error to refuse the entire instruction.

The court over defendant's objection admitted evidence of an indefinite threat made by defendant toward the deceased some time prior to the shooting. As a threat the statement was uncertain, but it clearly evidenced a dislike on defendant's part and his desire to be rid of her. This was proper to show the state of his feelings toward the deceased. (*State v. Battle*, 126 N. C. 1036, 35 S. E. 624; *Hammock v. State*, 52 Ga. 397.)

The remaining specifications have no merit. It is insisted that the evidence is insufficient to support the verdict. We think the circumstances of the killing and the conduct and relationship of the parties as evidenced by the record are sufficient to warrant the verdict.

Of the errors urged on appeal from the order denying a new trial, the only one meriting consideration is the court's refusal to permit the defendant to take the depositions of certain jurors, and submit the oral evidence of others for the purpose of showing gross misconduct of one of their number in the jury-room. The motion was supported by the affidavit of defendant's counsel based upon information and belief that one of the jurors had stated in the jury-room that he knew all about the case before he went into the jury-box; that "there was nothing to it but murder," and that his harangue continued until a fellow-juror threatened to report

him to the judge, whereupon he desisted but voted for first degree murder several times.

This brings squarely before the court the question as to whether or not in a criminal case a juror can, under sections 6888 and 9017, C. S., impeach his verdict by showing misconduct in the jury-room other than the determination by chance. Many decisions hold in the affirmative, permitting the juror to testify or make affidavit to any misconduct by members of the jury or others in the jury-room. But is relief possible under our present statutes, taken bodily from California, whose court for years has held the evidence of a juror inadmissible in a criminal case to impeach his verdict save in the case of verdicts arrived at by chance? Not until 1862, when the California civil statute was amended, did its court recognize any exception whatever.

In a particularly illuminating analysis in his concurring opinion in *State v. Abbott,* 38 Ida. 61, 224 Pac. 791, Chief Justice McCarthy traced the genesis and development of the California statutes adopted *verbatim* by Idaho, and marshaled an unbroken line of decisions from that state directly construing these original sections to prohibit a juror from impeaching his verdict in a criminal case except in the one instance mentioned. We do not think such construction either unreasonable or unconscionable, and agree with the former chief justice that it should be sustained until modified by future legislation. The judgment and order of the trial court should be affirmed.

GIVENS, J., Concurring Specially.—Defendant assigned as error, among other grounds, the refusal of the trial court to permit him to show, upon motion for a new trial, by affidavits and testimony of some of the trial jurors, as showing misconduct of the jury, that after they had retired to the jury-room and during their deliberations, one of the jurors stated, in substance, that "he knew all about the case before he went into the jury-box; that there was nothing to it but murder"; and his harangue continued until one of his fellow-jurors threatened to report him to the judge, whereupon he

desisted but several times voted for murder in the first degree.

T. Bailey Lee, Commissioner, following the concurring opinion of McCarthy, C. J., in *State v. Abbott,* 38 Ida. 61, 213 Pac. 1024, 224 Pac. 791, holds that the affidavit of a juror is not admissible for the purpose of showing misconduct of the jury.

It is urged that *Perry v. Bailey,* 12 Kan. 539, *Woodward v. Leavitt,* 107 Mass. 453, 9 Am. Rep. 49, *Mattox v. United States,* 146 U. S. 140, 13 Sup. Ct. 50, 36 L. ed. 917, and *State v. McChesney,* 114 Wash. 113, 194 Pac. 551, distinguish between affidavits showing overt acts and affidavits which state facts or matters which inhere in the verdict, reaching the conclusion that overt acts may be shown while matters which inhere in the verdict may not be.

The rule appears to be universal that the jury may not, by affidavit or otherwise, impeach its verdict. It is contended, however, that while a juror may not state what influence the overt act had on his mind he may state what overt acts took place, and it is for the judge to determine whether or not such overt acts were of such a nature as to probably have improperly influenced the jury.

It is a well known and conceded proposition that what may not be done directly may not be done indirectly. In the final analysis if a juror is permitted to state overt acts he is impeaching his verdict, because while he may not say that he was improperly influenced by such overt acts he is laying the foundation for the court to so state; this, therefore, constitutes an impeachment of his verdict and in the absence of a statute permitting it is not permissible. (*State v. Stein,* 60 Mont. 441, 199 Pac. 278.)

"That, on the hearing of the motion for new trial, defendant tendered four of the members of the jury which had convicted him to prove that, while the jury was in the jury-room, deliberating for the purpose of arriving at a verdict, Vargas made the statement: 'I am going to join in the verdict' (of guilty without capital punishment), 'but, if the defendant was a white man, I would stay here until hell

freezes over for acquittal. I would not, and I don't believe you would' (meaning the other jurors) 'convict the accused on that evidence, if he were a white man.'

"That he tendered to other witnesses, who had not served on the jury, to show that, just after the verdict had been found and the jury discharged, said Vargas made the fol-' lowing statement, to wit: 'I wasn't going to hang the jury for the sake of a damned negro, but, if he had been a white man' (meaning the defendant), 'I would have held out until hell froze over for acquittal.'

"That the testimony so offered was objected to by the district attorney on the ground that 'no testimony could be heard to impeach the verdict of the jury.' That counsel for defendant called the attention of the court to the fact that the testimony was not offered for the purpose of impeaching the verdict, but for the purpose of showing that the juror was incompetent, had answered falsely on his *voir dire*, and was biased and prejudiced against the accused, because he was a negro. That the objection was, however, sustained, and the bill reserved. Clearly, the purpose was to prove, by witnesses who had served on the jury, that one of their number, while the case was under submission, and consideration by them, had made a statement, in the presence of the other jurors, showing that he was incompetent, by reason of prejudice, to serve on the jury or participate in the verdict, and hence that the verdict which they and he agreed on was void and should be set aside; and to prove by other witnesses, nonjurors, that the same juror had made a similar statement, outside of the jury-room and after the finding of the verdict, thereby, in effect, destroying the verdict in the finding of which he had just participated. The impeachment of the verdict therefore goes back to the statement of one of the jurors, in the jury-room, before the finding of the verdict, and out of the jury-room, after the finding; and, under settled jurisprudence, is not admissible." (*State v. Howard*, 144 La. 91, 80 So. 213 (citing cases).)

*Harper v. State*, 16 Ala. App. 153, 75 So. 829, *Keith v. State*, 7 Okl. Cr. 156, 123 Pac. 172, and *Overton v. State*,

7 Okl. Cr. 203, 114 Pac. 1132, 123 Pac. 175, distinguish *Perry v. Bailey, supra.*

In reaching this conclusion I have also examined the following cases which bear on different phases of the question involved: *Hyde v. United States,* 225 U. S. 347, Ann. Cas. 1914A, 614, 32 Sup. Ct. 793, 56 L. ed. 1114; *Einung v. Schlopkohl,* 129 Minn. 9, 151 N. W. 273; *State v. Rand,* 170 Iowa, 25, 151 N. W. 1078; *State v. Brannon,* 133 La. 1027, 63 So. 507; *State v. Long,* 201 Mo. 664, 100 S. W. 587; *State v. Linn,* 223 Mo. 98, 122 S. W. 679; *State v. Shearon* (Mo.), 183 S. W. 293; *State v. OBrien,* 35 Mont. 482, 10 Ann. Cas. 1006 (note not on this point), 90 Pac. 514; *People v. Sidwell,* 29 Cal. App. 12, 154 Pac. 290; *Chicago, R. I. & P. Ry. Co. v. Brown,* 55 Okl. 173, 154 Pac. 1161; *People v. Kromphold,* 172 Cal. 512, 157 Pac. 599; *State v. Long,* 93 S. C. 502, 77 S. E. 61; *Sizemore v. Commonwealth,* 189 Ky. 46, 224 S. W. 637; *Hughes v. State,* 126 Tenn. 40, Ann. Cas. 1913D, 1262 (note not on this point), 148 S. W. 543; *Douglas v. State,* 58 Tex. Cr. 122, 137 Am. St. 930, 124 S. W. 933; *Green v. Terminal R. Assn. of St. Louis,* 211 Mo. 18, 109 S. W. 715; *Patterson v. State,* 63 Tex. Cr. 297, 140 S. W. 1128; *State v. Aker,* 54 Wash. 342, 18 Ann. Cas. 972 (note not on this point), 103 Pac. 420; *People v. Sprague,* 217 N. Y. 373, 11 N. E. 1077; *State v. English,* 41 S. D. 560, 172 N. W. 116; *State v. Lyle,* 105 Wash. 435, 178 Pac. 468; *State v. Bischoff,* 146 La. 748, 84 So. 41; *Phillips v. R. I. Co.,* 32 R. I. 16, 78 Atl. 342, 31 L. R. A., N. S., 930.

Most of the states hold such affidavits inadmissible for any purpose; Kansas, Iowa, Florida and Washington hold the other way. (*Newcomb v. State* (Okl. Cr.), 213 Pac. 900; *State v. Gilliland,* 187 Iowa, 794, 174 N. W. 496; *State v. Wynne,* 156 La. 938, 101 So. 273; *State v. Aker,* 54 Wash. 342, 18 Ann. Cas. 972, 103 Pac. 420; *State v. Parker,* 25 Wash. 405, 65 Pac. 776.)

Some cases are based on a statute. (*Osborne v. State,* 96 Ark. 400, 132 S. W. 210; *Esquivel v. State,* 98 Tex. Cr. 125, 246 S. W. 399; *Fawvor v. State* (Tex. Cr.), 265 S. W. 160.)

I am authorized to say that Budge and Taylor, JJ., concur

with me in the above and the trial court, therefore, did not err, and the judgment should be affirmed, and it is so ordered, the opinion of T. Bailey Lee, Commissioner, above set forth being hereby adopted as the opinion herein.

WM. E. LEE, J., Dissenting.—I concur with the majority opinion except on one point. The proposition that a juror will not be heard to impeach his verdict is sustained both by reason and authority. He cannot suggest the ground on which the verdict was based, that it resulted from a misunderstanding of the court's instructions or on a misapprehension of the evidence. Jurors are not allowed to state what influenced their action and resulted in their verdict. Such things essentially inhere in the verdict itself. Public policy, if nothing else, could not countenance a different rule. However, there is a clear distinction between permitting a juror to impeach his verdict, to say what caused him or other jurors to agree on their verdict, and in permitting a juror to testify that the jury received evidence out of court, in that a juror purported to inform his fellows of what he knew about the case, other than what he learned in the trial. In the latter case the juror is not permitted to testify that such additional evidence, the statements of the offending juror, influenced him or the jury in reaching a verdict. On a motion for a new trial, where such offensive conduct would be brought to light, the testifying juror is restricted to a statement of the alleged misconduct and the court determines whether such misconduct influenced the jury in reaching its verdict. It seems to me that the majority fail to distinguish between permitting a juror to impeach his verdict and in permitting him to testify to instances of misconduct.

The supreme court of Kansas, speaking through Mr. Justice Brewer, in *Perry v. Bailey,* 12 Kan. 539, said:

"Public policy forbids that a matter resting in the personal consciousness of one juror should be received to overthrow the verdict, because being personal it is not accessible to other testimony; it gives to the secret thought of one the

power to disturb the expressed conclusions of twelve; its tendency is to produce bad faith on the part of a minority, to induce an apparent acquiescence with the purpose of subsequent dissent; to induce tampering with individual jurors subsequent to the verdict. But as to overt acts, they are accessible to the knowledge of all the jurors; if one affirms misconduct, the remaining eleven can deny; one cannot disturb the action of the twelve; it is useless to tamper with one, for the eleven may be heard. Under this view of the law the affidavits were properly received. They tended to prove something which did not essentially inhere in the verdict, an overt act, open to the knowledge of all the jury, and not alone within the personal consciousness of one.''

In *Woodward v. Leavitt*, 107 Mass. 453, 9 Am. Rep. 49, Mr. Justice Gray announced the rule to be:

'' . . . . that on a motion for a new trial on the ground of bias on the part of one of the jurors, the evidence of jurors as to the motives and influences which affected their deliberations, is inadmissible either to impeach or to support the verdict. But a juryman may testify to any facts bearing upon the question of the existence of any extraneous influence, although not as to how far that influence operated upon his mind. So a juryman may testify in denial or explanation of acts or declarations outside of the jury-room, where evidence of such acts has been given as ground for a new trial.''

The supreme court of the United States, in *Mattox v. United States*, 146 U. S. 140, 13 Sup. Ct. 50, 36 L. ed. 917, quoted the foregoing excerpts from the Kansas and Massachusetts courts, and commented on them as follows:

''We regard the rule thus laid down as conformable to right reason and sustained by the weight of authority. These affidavits were within the rule, and being material, their exclusion constitutes reversible error.''

The supreme court of Washington, in the comparatively late case of *State v. McChesney*, 114 Wash. 113, 194 Pac. 551, stated the rule as follows:

"Affidavits of jurors in a criminal case, purporting to state facts constituting misconduct, and not attempting to state what effect such alleged misconduct had on the jury, did not come within the rule that a juror will not be heard to impeach his own verdict."

See, also, *United States v. Ogden*, 105 Fed. 371; *State v. Rambo*, 69 Kan. 777, 77 Pac. 563; *State v. Clark*, 34 Kan. 289, 8 Pac. 528; *Harris v. State*, 24 Neb. 803, 40 N. W. 317; *State v. Parker*, 25 Wash. 405, 65 Pac. 776; *Leith v. State*, 206 Ala. 439, 90 So. 687.

C. S., sec. 6888, not only provides that the misconduct of the jury is a ground for a new trial, but it also provides one exception to the general rule that a juror will not be heard to impeach the verdict, in that where the verdict has been arrived at by a resort to chance such fact may be disclosed by a juror, and is a ground for a new trial. The fact that the law has provided one instance where a juror will be permitted to impeach a verdict, to say what caused him to arrive at his verdict, cannot be construed to mean that while the law provides misconduct of the jury as a ground for a new trial, instances of misconduct that do not inhere in the verdict cannot be shown by a juror. There is no place here for the application of the maxim *"Expressio unius est exclusio alterius."*

It is worthy of note also that C. S., sec. 6888, relates to new trials in civil actions. C. S., sec. 9017, sets forth the grounds for a new trial in a criminal action, one of the grounds being that the jury has received evidence out of court other than that resulting from a view of the premises. It is true that the law does not state how it may be shown that evidence was received other than as provided by law, but the law has recognized the right, and when evidence has been received out of court, surely the court should permit such misconduct to be shown in the most practical and effective manner, by affidavit or by the testimony of a juror. In my judgment, the construction placed on the statute by the majority is unreasonable, and I am unwilling to follow it. The effect of the majority opinion is that, while the statute

has expressly provided that the receipt of evidence in other than the manner provided by law is a ground for a new trial, even when the misconduct is of such a character that it precludes every reasonable presumption that the verdict was obtained by lawful means, it cannot be shown by the members of the jury, the only persons who can show it.

I am authorized to say that Chief Justice William A. Lee concurs with me in this opinion.